## LYNCH and others *v.* MERCANTILE TRUST Co.

*(Circuit Court, D. Minnesota.* November 22, 1883.)

1. FRAUDULENT MISREPRESENTATIONS—RECKLESS STATEMENTS.
   A person is not at liberty to make positive assertions about facts material to a transaction unless he knows them to be true; and if a statement so made is in fact false, the assertor cannot relieve himself from the imputation of fraud by pleading ignorance, but must respond in damages to any one who has sustained loss by acting in reasonable reliance upon such assertion.

2. SAME—WHAT INQUIRIES MUST BE MADE.
   The purchaser of land is entitled to rely upon the vendor's assertions about the boundaries, and is not obliged to consult the recorded plat.

3. SAME—PRINCIPAL AND AGENT—IMPUTED FRAUD.
   A principal is liable for the reckless or otherwise fraudulent misrepresentations of his agent.

4. SAME—VENDOR CANNOT REPUDIATE CONTRACT.
   A purchaser is entitled to the benefit of his contract, and the vendor cannot purge himself of fraud in the transaction by offering to rescind, but is liable for the difference between the value of the property actually sold and the value of the property as represented.

A stipulation waiving a jury is filed, and the case is tried by the court. This suit is brought to recover damages for fraudulent representations, alleged to be made by the defendant's agent to one of the plaintiffs, upon the sale of a certain tract of land called "E. Murphy's reserved block," in the city of Minneapolis, owned by defendant, and sold for $15,000. The plaintiffs, being desirous of purchasing a house and lot for a hospital, applied, through Alicia Lynch, to Brown & Hamlin, real estate brokers and agents in Minneapolis. They had for sale, belonging to the defendant, "E. Murphy's reserved block," so

called, on which was a large house, and application was made for its purchase. Mr. Brown went with the applicant and showed the property, pointing out the boundaries, and stated that this block included all the land lying between certain fences as pointed out on three sides, and extending to the river, and that the frontage on Fifth (now Jackson) street was 600 feet from fence to fence, and 300 feet deep, or to the river. The applicant subsequently measured the lot pointed out and described by the agent, and found the frontage to be 600 feet, and, relying upon the representations of Brown, the plaintiffs concluded the purchase, took possession, and made improvements.

These representations were false, and the true boundary of the tract was only 470 feet frontage, and all the land pointed out between the fences did not belong to the defendant. Brown had no actual knowledge of the size of the block, and supposed it included all the land within the fences. The contract of sale was drawn up in Brown & Hamlin's office, sent to the proper person to execute, and subsequently the defendant ratified Brown's sale, and received the benefits thereof. When the defendant discovered that the representations were false, and the boundaries incorrectly pointed out, and after the plaintiffs had received the deed and made improvements, it offered to rescind the sale, and pay back the part of the purchase price received, which was declined, and on failure to pay for the alleged injury suit was brought.

*Babcock & Davis*, for plaintiffs.

*Bigelow, Flandrau & Squires*, for defendant.

NELSON, J. It is necessary for the plaintiffs to prove that the false representations made were material, and were relied on and operated as one of the inducements to the purchase, before entitled to a judgment. Fraud, as well as false representations, must clearly appear, and there must exist positive statements of material facts as true,— false affirmation of facts which were relied on and induced the plaintiffs to purchase. The rule is thus expressed by MAULE, J., in *Evans* v. *Edmonds*, 13 C. B. 777, 786:

"I conceive that if a man having no knowledge whatsoever on the subject takes upon himself to represent a certain state of facts to exist, he does so at his peril; and if it be done either with a view to secure some benefit to himself or to deceive a third person, he is in law guilty of a fraud, for he takes upon himself to warrant his own belief to the truth of that which he so asserts."

Or, as stated in *Ainslie* v. *Medlycott*, 9 Ves. 21:

"If, without knowing that it is true, he takes upon himself to make a representation to another, upon the faith of which that other acts, no doubt he is bound, though his mistake was perfectly innocent."

So, in *Brooks* v. *Hamilton*, 15 Minn. 31, (Gil. 10:)

"To constitute a fraudulent representation, the party making the representation must represent that as true of his own knowledge which is not true, but as to the truth or falsity of which he has no knowledge, or must represent

that as true which is false, and the truth or falsity of which he is presumed to know."

The owner of property, when he sells, is presumed to know whether the representation which he makes about it is true or false; and the positive statement thus made of a material fact, if false, is a fraud in law. A purchaser trusts in the owner's statements, and the law will assume that the owner knows his own property and truly represents it. So if an injury results from the statement of a material fact which influences the sale, and not from the statement of the opinion or belief of the vendor, an action will lie if the representation is false, and it is not material whether the vendor knew to be false what was stated. If the representation as to a material point was relied on, and was stated as a fact, intended to convey the impression that the party had actual knowledge, the vendor cannot plead ignorance as an excuse if the statement was false.

In this case the representations by the agent were positive of a fact presumed to be within the knowledge of the defendant and his agent. The defendant must bear the burden of the negotiation, or any liability growing out of any false statements accompanying it and material to the sale. It not only placed the property in Brown & Hamlin's hands for sale, but ratified their acts and received the money paid according to the terms of the contract. Its liability for the agent's acts in making the negotiation is thus established. The principal is bound by the fraud of his agent. The statements of Brown when he went down and pointed out the property tended to throw the purchaser off her guard and render an examination of the land less perfect, and the purchaser was not required to make any further examination than was done. The plaintiffs were not bound to consult the plat. *Porter* v. *Fletcher*, 25 Minn. 493.

When the agent made his statements, these acts imported knowledge of the facts by him. The representations made by Brown are conceded, and the falsity of them; but their materiality, and, if material, the liability of the defendant, is persistently denied. There is no doubt the representations are material, and tended to induce the trade. The agent made them, not according to his opinion and belief, but as of his own knowledge. Such averments are positive to material points affecting the sale; for quantity and location are material elements, and always taken into consideration when real estate is sold, and, if statements regarding them are untrue, constitute fraud.

The defendants urge—*First*, that the sale was made with reference to the records of the office of register of deeds of Hennepin county, where the plat of the property was recorded, upon which its location and size and boundaries are all distinctly marked, and the parties to the sale are bound thereby; *second*, that the representation was innocent, founded in ignorance and mistake, and no action will lie. There is no evidence to sustain the first defense, and the recorded

plat did not disclose upon its face the size of the block.    In regard to the second defense, the rule is well settled that to state what is not known to be true, whereby injury results to another, is as criminal as to state what is known to be false; and it is reasonable to presume that the defendant or its agent, who knew how the property was obtained and placed in the market for sale, would have the boundaries of the land correctly described, and could be trusted in representing that the land sold was included within the fences pointed out to the plaintiff, and under such circumstances the false statement is of a matter supposed to be within defendant's knowledge, and imparted to its agent, and cannot be said to have been made through ignorance. It is not the statement of the agent's belief that the block was included within the fences, and was 600 feet front, but the positive averment of his own knowledge that it was so located, when it is conceded that he had no actual knowledge of the matter.    If the agent had stated that he believed the land had a frontage of 600 feet, and he believed it was included within the fences, and extended in front from fence to fence, the element of fraud would not exist.    But the agent was aware that he had only an opinion or belief, which he imposed upon the plaintiff as knowledge.    The rule is well stated in *Marsh* v. *Falker*, 40 N. Y. 562, which is followed by all the cases cited by the defendant.    The party making the false statement "must have assumed or intended to convey the impression that he had actual knowledge of their truth, though conscious that he had no such knowledge."    In this case the agent made statements as of his own knowledge that the land which he sold the plaintiff, and was then negotiating for, extended from fence to fence.    He made these representations in such manner and in such terms as, stated in the cases cited by defendant, "were calculated to produce the conviction in the mind of the purchaser that he had personal knowledge of their truth; that he made the statement relied on upon what he knew as distinguished from what he heard.    This was not true, and he himself knew at the time it was not true, and from these circumstances the intent to deceive the purchaser could very naturally be inferred." This extract very clearly states the law.

The case in 2 Allen, 214, is distinguished from this in that the true boundaries of the land sold were pointed out and information was thus given the purchaser, so that by a mere survey he could ascertain the correct quantity.    So, in 102 Mass. 247, the court decides that false representations are not actionable as to quantity when the true boundaries are pointed out; and in that case, also, when the deed was being drawn, the seller stated that the representation of the quantity of land was his belief only.    The plaintiffs were not required, after the deed had been executed, to accept the offer of the defendant to refund the money received and declare the contract off. They had the option to allow the sale to stand, and by an action at law to recover for the injury sustained.    The latter course is pursued,

and the party liable for the fraudulent representations cannot object. The measure of damages is the value of the property lost by false representations, which were two lots included within the fences not belonging to the defendant; and Brown testifies these lots were worth $800 each. I shall take this as a fair and just value, and judgment is ordered against the defendant for $1,600, with costs.

Consult 2 Pom. Eq. p. 352, § 884; *Smith* v. *Richards*, 13 Pet. 26; 3 Mo. 478; 9 Ves. 13, 21; 42 Vt. 121; 28 Mich. 53; 16 Ala. 785; 1 N. Y. 311; 86 N. Y. 84, 86; 47 Mich. 193; [S. C. 10 N. W. Rep. 196.]

---

A motion in arrest of judgment, heard before Judges McCRARY and NELSON, at the December term, 1883, was denied.