POST ET AL., APPELLANTS, *v.* LIBERTY, RESPONDENT.

(No. 3,061.)

(Submitted January 19, 1912. Decided February 5, 1912.)

[121 Pac. 475.]

*Real Property—Contracts of Sale—Rescission—Fraud—Representations — Warranties —Boundaries—Caveat Emptor — Pleadings—Amendments—Waiver.*

Real Property—Contracts of Sale—Boundaries—Fraud—Rescission.
1. The representations made by a land owner to an intending purchaser as to the boundaries of his property, *held* to have been, in effect, warranties, the owner being presumed to know its location; and where, after the consummation of a sale, the statements of the vendor in this regard proved false, the result was a fraud within the meaning of section 4978, Revised Codes, whether made in good or bad faith, and the vendee had a right to rescind or sue for damages.

Same—Boundaries—Duty of Vendor and Vendee.
2. Where the vendor does not undertake to point out to an intending purchaser the boundary lines of his land, the latter must ascertain them for himself; otherwise, he is relieved of this duty and may rely upon the statements made by the former.

Same—Fraud—Caveat Emptor.
3. The rule of *caveat emptor* has not any application where fraud entered into the transaction sought to have set aside.

Same—Rescission—Complaint—Amendment—Waiver.
    4. Where, in a suit to rescind a contract for the sale of real estate, the merits of the controversy were tried, plaintiffs introducing evidence that they had restored to defendants everything received from the latter under the contract, though the complaint failed to allege that plaintiffs had placed defendants *in statu quo,* as required by section 5065, Revised Codes, the pleading will, on appeal, be treated as amended in this respect.

*Appeal from District Court, Fergus County; E. K. Cheadle, Judge.*

Action by Chester and Menus Post against Joseph Liberty. From a judgment for defendant and an order overruling their motion for new trial, plaintiffs appeal. Reversed and remanded, with directions to enter decree for plaintiffs.

*Mr. John A. Coleman,* and *Mr. C. A. Linn,* for Appellants, submitted a brief, and argued the cause orally.

In support of the argument on the insufficiency of the evidence we call attention to the following cases: *Arnold* v. *Sinclair,* 12 Mont. 248, 29 Pac. 1124; *Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805; *Weiss* v. *Hamilton,* 40 Mont. 99, 105 Pac. 74; *McAllister* v. *McDonald,* 40 Mont. 375, 106 Pac. 882; *Watkins* v. *Watkins,* 39 Mont. 367, 102 Pac. 860; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; *Star Mills* v. *Bailey,* 140 Ky. 194, 140 Am. St. Rep. 370, 130 S. W. 1077; *Bosse* v. *Weik,* 144 Mo. App. 468, 129 S. W. 417; *Campbell* v. *Gowsan,* 35 Utah, 268, 19 Am. St. Rep. 660, 20 L. R. A., n. s., 414, 100 Pac. 397; *Dick* v. *Swenson,* 137 Ill. App. 68.

In view of the preponderance of the evidence in favor of the plaintiffs, we urge that the decision is contrary to the general rule of law applicable to this class of cases, and respectfully refer the court to the following leading cases: In the case of *Roberts* v. *Holliday* the supreme court of South Dakota has held: "A purchaser of real estate is entitled to rely on the representations of an agent for the sale thereof, as to its location and is not bound by the doctrine of '*caveat emptor*' to make further inquiries as to its boundaries." (*Roberts* v. *Holliday,* 10 S. D. 576, 74 N. W. 1034.)  False representa-

tions by a vendor to the purchaser as to the boundaries of the land sold are representations as to facts, authorizing rescission. Representations involving mere matters of opinion or questions of judgment, as much within the knowledge of one party as the other, cannot be made the basis of an action to rescind or for damages, even when not in accord with the truth; but representations as to the boundaries of land are not of that sort. Such representations are regarded as representations of fact, and the owner, if he undertakes to point out the boundaries at all, must point them out correctly, under penalty of responding in damages or in rescission (*Freeman* v. *Gloyd,* 43 Wash. 607, 86 Pac. 1051; *Eichelberger* v. *Mills Land & Water Co.,* 9 Cal. App. 628, 100 Pac. 117) ; also where the vendor points out to the vendee certain fences as the boundaries of the land sold, he is liable to the vendee for the false representations, where it afterward appears that such fences were not the boundaries, whether he made the representations in good faith or not. (*Davis* v. *Nuzum,* 72 Wis. 439, 1 L. R. A. 774, 40 N. W. 497; *Walsh* v. *Hall,* 66 N. C. 233; *Beardsley* v. *Duntley,* 69 N. Y. 577; *Olson* v. *Orton,* 28 Minn. 36, 8 N. W. 878; *Castenholz* v. *Heller,* 82 Wis. 30, 51 N. W. 432; *Lovejoy* v. *Isbell,* 73 Conn. 368, 47 Atl. 682; *Griggs* v. *Woodruff,* 14 Ala. 9; *Campbell* v. *Frankem,* 65 Ind. 591; *Roberts* v. *Plaisted,* 63 Me. 335; *Camp* v. *Camp,* 2 Ala. 632, 36 Am. Dec. 423; *Lawson* v. *Vernon,* 38 Wash. 422, 107 Am. St. Rep. 880, 80 Pac. 559; *Munroe* v. *Pritchett,* 16 Ala. 785, 50 Am. Dec. 203; *Jopling* v. *Dooley,* 1 Yerg. (Tenn.) 289, 24 Am. Dec. 450; *Banks Griffith & Sons* v. *Hahl & Co.* (Tex. Civ. App.), 129 S. W. 400; 20 Cyc. 87.)

The court erred in entering the decree in this cause for the reason that the same does not conform to the statutes and decisions of the supreme court of this state, in that it fails to recite any of the findings of fact or conclusions of law and determination of the court, but leaves the terms and provisions to be determined by reference to the files and pleadings in the case only; and for the further reason that it is

misleading, ambiguous, unintelligible, and cannot be enforced standing alone as a decree. (*Quinlan* v. *Calvert,* 31 Mont. 118, 77 Pac. 428; *Quigley* v. *Birdseye,* 11 Mont. 439, 28 Pac. 741; *Waller* v. *Weston,* 125 Cal. 207, 57 Pac. 892; *City of Helena* v. *Hale,* 38 Mont. 481, 100 Pac. 611; Rev. Codes, sec. 6764.)

*Mr. O. W. Belden,* and *Messrs. Ayers & Marshall,* submitted a brief in behalf of Respondent. *Mr. Belden* argued the cause orally.

Plaintiffs' argument touching the insufficiency of the evidence to justify the decision is based upon the assumption that there is evidence clearly establishing fraud in the transaction. The record is barren of any proof establishing or tending to establish that plaintiffs suffered any damage by reason of any representation made by defendant prior to entering into the said contract, and in the absence of any damage there could be no fraud. (Smith on Law of Fraud, sec. 287; *Holton* v. *Noble,* 83 Cal. 7, 23 Pac. 58; *Wallace* v. *Bently,* 77 Cal. 19, 11 Am. St. Rep. 231, 18 Pac. 788; *Bartlett* v. *Blaine,* 83 Ill. 25, 25 Am. Rep. 346; *Lorenzen* v. *Kansas City Ins. Co.,* 44 Neb. 99, 62 N. W. 231.)

From an examination of the testimony it appears that on all of the matters embodied in plaintiffs' argument as to the insufficiency of the evidence, there were direct conflicts in the testimony. The jury had an opportunity to see the witnesses and judge for themselves which ones were the most worthy of belief. The same opportunity was presented to the trial court. The jury made their findings, which were subsequently adopted, and all the findings are abundantly supported by the testimony produced at the trial. In an equity case involving such matters as the case at bar, the court has a right to submit the controverted questions to the jury, who shall determine the facts. Their verdict or findings will not be disturbed by the appellate court unless clearly unsupported by the evidence. (*Kleinschmidt* v. *Dumphy,* 1 Mont. 100; *Sweet-*

*land* v. *Olsen,* 11 Mont. 27, 23 Pac. 339; *Pearson* v. *Harper,* 16 Mont. 143, 40 Pac. 143; *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871; *Rowe* v. *Shannon,* 30 Mont. 238, 46 Pac. 1132; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918.)

This action is equitable in its nature, and hence appellant is in no position to complain of the instructions to the jury. (*Lawlor* v. *Kemper,* 20 Mont. 13, 49 Pac. 398; *King* v. *Pony Gold Min. Co.,* 28 Mont. 74, 72 Pac. 309; *Cook* v. *Gallatin R. R. Co.,* 28 Mont. 340, 72 Pac. 678; *Hendrickson* v. *Wallace,* 29 Mont. 504, 75 Pac. 355.)

Where the findings were made on conflicting evidence, the trial court committed no error in adopting them. (*Haggin* v. *Saile,* 23 Mont. 375, 59 Pac. 154; *Way* v. *Sherman,* 30 Mont. 410, 76 Pac. 942; *Travis* v. *McCormick,* 1 Mont. 347; *Leonard* v. *Shatzer,* 11 Mont. 422, 28 Pac. 457; *Wetzstein* v. *Largey,* 27 Mont. 212, 70 Pac. 717.)

Appellant challenges the sufficiency of the findings and conclusions as to form. No specific form is required by the provisions of section 6764 of the Revised Codes. No requests for findings were made by the plaintiffs as required by section 6766. We submit that as a matter of law the findings and conclusions were sufficient both as to form and substance. (*Quinlan* v. *Calvert,* 31 Mont. 115, 77 Pac. 428; *Bitter* v. *Moaut Lumber Co.,* 10 Colo. App. 307, 51 Pac. 519; *County of Sutter* v. *McGriff,* 130 Cal. 124, 62 Pac. 412; *Yellowstone Bank* v. *Gagnon,* 25 Mont. 271, 64 Pac. 664.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to rescind a contract for the sale of real estate and personal property, to recover a portion of the purchase price, and for damages. The complaint alleges that on July 27, 1910, the parties hereto entered into a written contract by the terms of which plaintiffs agreed to purchase, and defendant to sell, 780 acres of land in Fergus county, described by government subdivisions, together with certain

personal property, for the sum of $20,320, payable $2,000 upon the execution of the contract, and the balance in installments covering a period of about eight years. It is alleged that prior to the execution of the contract, defendant took the plaintiffs to the land, pointed out to them a certain road, and represented that it was the eastern boundary line of the premises he was seeking to sell, and that all of the land to be sold was situated west of that road, except about twenty acres; that defendant further represented that 600 acres of the land were in cultivation; and that these representations were made for the purpose of inducing the plaintiffs to purchase the property. It is also alleged that plaintiffs did not know the location of the boundary line, but believed the representations made by defendant to be true, relied upon them, and by reason thereof executed the contract and paid the $2,000 as a part of the purchase price. It is further alleged that the land pointed out to them by the defendant as the land he was offering for sale was valuable chiefly for agricultural purposes; whereas the land situated immediately east of the road was rough, rocky, hilly, and of little or no value. It is then alleged that the representations made by defendant were false, and were made for the purpose of deceiving and defrauding the plaintiffs; that in truth and fact the road was not on or near the eastern boundary line of the land described in the contract; that more than 200 acres lay east of the road, and was rough, rocky and valueless; and that only about 300 acres of the lands actually purchased were in cultivation. Plaintiffs then allege that they went into possession of the property and expended $1,436 in time and money on improvements, in caring for the crops, *etc.;* that they soon thereafter discovered that the representations made by defendant were false, and immediately notified defendant that they elected to rescind the contract, and demanded the return of the $2,000 which had been paid on account of the purchase price, and the further payment of the damages they had sustained, and that these demands were refused.

Defendant admits the execution of the contract, the receipt of $2,000, that he showed the plaintiffs over the property before the contract was executed, that plaintiffs took possession of the property under the contract and devoted three months of their time to it, that they made the demand upon him which is pleaded in their complaint, that he refused to comply therewith, and then denies every other allegation of the complaint. The cause was tried to the court, sitting with a jury. Certain special interrogatories were submitted to and answered by the jury. Three of these special findings were adopted as the findings of the court, and a judgment was rendered and entered, denying the plaintiffs any relief. Exceptions were taken to the findings made, and from the judgment and an order overruling their motion for a new trial the plaintiffs appealed.

Each of the plaintiffs testified unequivocally to the representations made by defendant as alleged in their complaint. They also called one J. L. McCormick, who corroborated them, in a measure at least. There was also introduced in evidence the written notice given by plaintiffs to the defendant of their election to rescind the contract, and the answer thereto from the defendant. So much of the letter written by plaintiffs to the defendant as is pertinent to the inquiry here is as follows:

"Lewistown, Mont., Nov. 2, 1910.

"Notice to Joseph Liberty, Geyser, Mont.—Dear Sir: We have caused to be surveyed the lands which we agreed to buy from you according to that certain written agreement of date July 27, 1910, and have discovered that approximately (200) two hundred acres are located east of the public road which traverses said land, and not on the west side of it, as you represented to us. On account of said fraudulent representations, we hereby rescind said contract. * * * "

And such portions of defendant's answer thereto as reflect upon the inquiry are as follows:

"Geyser, Mont., November 7, 1910.

"Post Bros., Lewistown, Mont.—Gentlemen: I am in receipt of registered notice dated November 2nd in which you state

that I misrepresented the lands on the Cameron ranch; I am sorry you see it that way. There was no misrepresentation on my part whatsoever. I showed you the north line, the west line and the east line of this property and I told you that the road along the bluff was the line, or about that. * * * I told you as near as possible where the land was on this entire tract and if there is, according to your statement, 200 acres across on the south side then there are 200 acres of land more than I thought I had or that I was selling.''

It will be observed that plaintiffs refer to the rough land as lying east of the road, while defendant refers to it as lying south. The road runs southwesterly, and the land is properly described as south or east of the road. There is not any question but that both parties refer to the same land. The record also identifies the road referred to in defendant's letter as ''along the bluff'' as the same road which plaintiffs contend was pointed out by defendant as the east boundary line of the land.

The plaintiff Menus Post further testified that in November, 1910, he met the defendant in the office of Mr. Coleman in Lewistown, and had a conversation with him, in which the defendant made substantially the same statements as are contained in the letter above, and that during the course of the conversation defendant drew a map or plat of the land to show its location; but on the plat thus made defendant located the land a quarter of a mile, or, to use the witness' own language, ''one eighty,'' west of the actual location as given in the contract. This conversation is not denied, and there is not a word in explanation of the statements in defendant's letter.

Defendant in his oral examination denied that he mentioned the lines to Menus Post; admitted that he showed the east line to the plaintiff Chester Post, but denied that he ever stated that the land was all west of the road. However, he did testify: ''I always did think that the [east] line was just about the middle of the creek there.'' The evidence shows

that the road runs along the creek. It is somewhat difficult to understand a portion of the evidence. The witnesses made use of a map and testified with reference to it; but in pointing out different places the record merely contains the word "indicating," without anything to fix the point definitely. Assuming, however, the position most favorable to defendant, that his evidence tends to show that he pointed out the road as on the east line only at the extreme northeastern portion of the land, and that he actually showed to Chester Post the correct line along the east side of the land in section 14 and the corner post at the extreme southeasterly portion of the land in section 27, we are then confronted with this situation: The plaintiffs testify positively that defendant pointed out to them the road as the east line of the land he was seeking to sell, and asserted that the land all lay west of the road, except a small portion, about twenty acres, presumably in section 27. The witness McCormick, apparently disinterested, corroborated plaintiffs to some extent, at least. But of much greater consequence is the letter written by defendant and quoted above. If the language of that letter, when read in connection with the notice to which it is an answer, is susceptible of any meaning at all, it is that the defendant pointed out the road as substantially the east line of the property he was seeking to sell; that he was under the impression when he wrote the letter that there was not any portion of the land lying east of the road, and if there was in fact any substantial part of it to the east of the road he had been mistaken in the location of the east line. The language of the letter, "and if there is, according to your statement, 200 acres across on the south side then there are 200 acres of land more than I thought I had or that I was selling," can only be reconciled with the theory of plaintiffs that the defendant was selling land situated west of the road. Furthermore, defendant does not deny or offer any explanation of the testimony of Menus Post that in November, in Mr. Coleman's office, he (defendant) repeated, in substance, the statements contained in the letter, and then and there drew a plat of the

land, locating it a quarter of a mile west of where it actually lies, thereby showing that he either did not know the location of the east boundary line, was honestly mistaken as to its location, or was willfully misrepresenting it. In view of the proof thus made by plaintiffs, and the fact that defendant's statements stand alone, unsupported by any circumstance or other testimony, to say that plaintiffs have not sustained their contention as to the representations made with reference to the boundary line by a fair preponderance of the evidence is to deny to the term "preponderance of the evidence" any meaning whatever, and to preclude a defeated party from ever getting a new trial upon the ground of the insufficiency of the evidence to sustain the findings made in the lower court. But insufficiency of the evidence is made a ground for a new trial by statute. (Rev. Codes, sec. 6794.)

From a remark of the trial judge in sustaining an objection, it would appear that the cause was determined upon the theory that plaintiffs ought to have caused the land to be surveyed before they purchased, or ought to have taken some pains to ascertain the boundary lines themselves before executing the contract. The jury found that the defendant did not represent that the land lay west of the road, and that the contract was not entered into by reason of any false representations made by the defendant. But these findings are wholly inconsistent with the evidence as presented. Each of findings 3 and 9, adopted by the court, should have been answered in the affirmative.

Having determined, as we do, that the plaintiffs established the facts claimed by them, with reference to the representations made by defendant respecting the location of the east boundary line of the land which he sought to sell; that they did not know the location of the land, but relied upon the representations made by defendant, believing them to be true; that they would not have purchased the land, had they known that more than 200 acres lay east of the road, and that the land shown them was of much greater value than the same quantity, including these 200 acres, of rough, hilly land east of the road,

the question then arises: What effect do such representations have upon the sale, when it appears that they were erroneous? The question is not a new one. It has been considered by the courts in many cases, and the decisions are quite harmonious and founded in sound reason. The theory upon which they proceed is that the owner of real estate is presumed to know the location [1] of his land; and if, in attempting to sell it, he undertakes to point out its location or its boundaries he is bound to do so correctly. In other words, his representations amount, in effect, to warranties; and if the land he points out is of greater value than the land he actually sells, the purchaser may rescind the contract, or sue for damages.

In *Roberts* v. *Holliday*, 10 S. D. 576, 74 N. W. 1034, a similar state of facts is presented. The agent of an owner of land took a prospective purchaser upon it and pointed out a fence as the west boundary line. The sale was effected, and the purchaser afterward ascertained that the fence was in fact sixty rods from the line. The court held that the purchaser had a right to rely upon the representation made by the seller's agent, and could recover damages for the loss sustained by reason of the misrepresentation.

In *Davis* v. *Nuzum*, 72 Wis. 439, 1 L. R. A. 774, 40 N. W. 497, the facts were that the owner of certain lands pointed out to a customer two fences which he said were on the north and west lines, respectively, of the land he was seeking to sell. The purchaser relied upon the representations and entered into a contract to purchase. Afterward it was found that neither fence was on the line it was supposed to represent. The purchaser was compelled to give up a strip of land twenty-one rods wide on the north and a strip fifteen rods wide on the west, and accept inferior lands on the south and east. The purchaser was adjudged entitled to recover damages because of the false representation; the court following the two earlier Wisconsin cases—*Bird* v. *Kleiner*, 41 Wis. 134, and *Cotzhausen* v. *Simon*, 47 Wis. 103, 1 N. W. 473. In *Bird* v. *Kleiner* the court said: "When the vendor undertakes to point out to the purchaser the boundaries of

his land, he is under obligation to point them out correctly, and has no right to make a mistake, except under the penalty of responding in damages.''

In *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403, 9 Am. St. Rep. 727, 18 N. E. 168, the owner of a leasehold interest in a mining property represented to an intending purchaser a certain line as the boundary line of his claim. If the line thus pointed out was the true line, the claim contained from eight to ten thousand tons of iron ore. Relying upon the representation, the purchaser concluded the purchase, and afterward ascertained that the line pointed out was not the true boundary, and that the ore bodies were not within the property he had purchased. He was held entitled to recover damages for the misrepresentation.

In *Schwenck* v. *Naylor*, 102 N. Y. 683, 7 N. E. 788, the owner of all the capital stock of a lumber company, doing business in Florida, represented to a prospective purchaser that the company owned certain lands adjacent to the city of Apalachicola, with a large water frontage, extensive docks, wharves, and buildings, and pointed out a certain ditch or creek which he represented to be the boundary line between the city and the company's property. Upon the faith of this representation, the purchaser bought two-thirds of the capital stock, and afterward ascertained that the line pointed out by the vendor to him was not the true boundary line; that in fact the company owned but a small portion of the waterfront and wharves which were included within the lines pointed out by the vendor. The court held that the purchaser had a right to rely upon the representation made by the vendor as to the boundary line, and if the representation proved to be untrue, and the vendee was injured thereby, he had a cause of action.

In *Freeman* v. *Gloyd*, 43 Wash. 607, 86 Pac. 1051, the court considered a similar question in a suit to rescind a contract, and said: ''Representations involving mere matters of opinion or questions of judgment, as much within the knowledge of one party as the other, cannot be made the basis of an action to rescind or for damages, even when not in accord with the truth,

but representations as to the boundaries of land are not of that sort. Such representations are regarded as representations of fact, and the owner, if he undertakes to point out the boundaries at all, must point them out correctly, under penalty of responding in damages, or an action of rescission." To the same effect is *Lawson* v. *Vernon*, 38 Wash. 422, 107 Am. St. Rep. 880, 80 Pac. 559. The following additional authorities assert the right of the vendee to rely upon the representations made by the vendor as to the location or boundaries of the property: *Campbell* v. *Frankem*, 65 Ind. 591; *Olson* v. *Orton*, 28 Minn. 36, 8 N. W. 878; *Castenholz* v. *Heller*, 82 Wis. 30, 51 N. W. 432.

If the vendor does not undertake to point out the location or boundary lines of property he seeks to sell, the vendee must [2] make such investigation as will satisfy himself; but if the vendor, who is presumed to know, points out the particular line as the boundary of his land, this fact relieves the vendee from making independent investigation.

In *Kirkland* v. *Lott*, 2 Scam. (Ill.) 13, 33 Am. Dec. 435, the plaintiffs brought an action upon a promissory note. The defense set up was that the note was given as the purchase price of certain lots of land, and that plaintiffs had misrepresented to defendant the location of the lots. The court, in treating the subject under consideration, said: "If the plaintiffs had made no representations as to the location of the lots, the defendant would reasonably have sought, and might have obtained, correct information from some other source; and it is not for the plaintiffs to say that it was his folly not to have done so, when their representations were the cause of his omission. Credulity on his part is no excuse for fraud on theirs."

In some of the earlier cases involving facts similar to those [3] presented in this instance, the rule of *caveat emptor* was applied and relief denied. But the courts have abandoned that position, and now hold that where fraud enters into the transaction the rule cannot have any application; and it is upon this theory that the cases cited above were determined. (See *Walsh* v. *Hall*, 66 N. C. 233, overruling *Lytle* v. *Bird*, 48 N. C. 222, and *Credle* v. *Swindell*, 63 N. C. 305.)

A court of equity will not permit the land owner to say, "It is true I pointed out the boundaries of my property to the intending purchaser, but he ought not to have relied upon my statement." The purpose of such representations, when made, is apparent. The California court of appeals has expressed itself upon the subject, in *Eichelberger* v. *Mills Land & Water Co.,* 9 Cal. App. 628, 100 Pac. 117. That was a suit to rescind a contract on the ground of misrepresentation. The land owner had shown the prospective purchasers over the land, which was represented to be 1,400 by 270 feet in extent. The contract was made, and the purchasers afterward discovered that they were getting land 1,400 by 170 instead. In treating the subject, the court said: "The effect of these findings is that plaintiffs, instead of measuring the land, and for themselves ascertaining the dimensions thereof, as they could have done, chose rather to rely upon the representations of defendant in relation to the same. Were they justified in so doing? As the representations were made prior to the transaction, and directly related to it, it must be presumed that they were made for the purpose and with the design of inducing plaintiffs to enter into the contract. (Pomeroy's Equity Jurisprudence, sec. 880.) As a general rule, the owner of real estate, in the absence of facts showing the contrary, is presumed to know the boundaries and area of his land, and a buyer is warranted in relying upon his representations in respect to such facts. It is immaterial whether the representations as to area be as to acreage or dimensions."

Section 5063, Revised Codes, provides that a party to a contract may rescind, if his consent was obtained by fraud, or if, through the fault of the other party, the consideration for the obligation fails, in whole or in part. The term "fraud," as used above, includes: "2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true. * * * 5. Any other act fitted to deceive." (Rev. Codes, sec. 4978.) The question of good or bad faith is not involved. The fraud arises from the fact that the statement is not true; and coming from

one who ought to know whereof he speaks, the effect of his state-ment is to deceive the intending purchaser.

In *Baughman* v. *Gould,* 45 Mich. 481, 8 N. W. 73, the facts were that the land owner pointed out a lot which was inclosed, and represented that the property he was offering for sale in-cluded all the ground within the inclosure. The sale was made; but the purchaser discovered afterward that a portion of the ground inclosed belonged to a third person. The court, in treat-ing the subject, said: "There being in fact a misrepresentation, though made innocently, its deceptive influence was as effective, and the consequences to Baughman as serious in respect to actual damage, as though it had proceeded from a vicious purpose. The result was a fraud on Baughman, in contemplation of law, and it entitled him to contend, in Gould's action for the purchase money, that the damage should be thrown on the latter."

Facts practically identical are disclosed in *Lynch* v. *Mercantile Trust Co.* (C. C.), 18 Fed. 486, 5 McCrary, 623, in which the court said: "The owner of property, when he sells, is presumed to know whether the representation which he makes about it is true or false; and the positive statement thus made of a material fact, if false, is fraud in law. A purchaser trusts in the owner's statements, and the law will assume that the owner knows his own property and truly represents it. So, if an injury results from the statement of a material fact which influences the sale, and not from the statement of the opinion or belief of the vendor, an action will lie, if the representation is false; and it is not material whether the vendor knew to be false what was stated. If the representation as to a material point was relied on, and was stated as a fact, intended to convey the impression that the party had actual knowledge, the vendor cannot plead ignorance as an excuse, if the statement was false."

In *Hanson* v. *Tompkins,* 2 Wash. 508, 27 Pac. 73, the vendor represented to the intending purchaser that a certain lot which he was offering for sale contained thirty-six and one-half acres. The sale was completed; but the purchaser afterward ascertained that the lot contained but twenty-six and one-half acres. In dis-

cussing the subject now under consideration, the court said: "If he knew the lot did not contain thirty-six and one-half acres, and represented to the defendants that it did, he would be guilty of fraud and deceit; but if he did not know it, and believed that the representations he made were true, and defendants, acting upon such representations, were damaged because it eventuated that they were not true, the liability of the plaintiff would be the same. In neither case will he be allowed to retain the benefit flowing from his misrepresentation." To the same effect are *Banks Griffith* v. *Hahl* (Tex. Civ. App.), 129 S. W. 400; *Foster* v. *Kennedy's Admr.*, 38 Ala. 359, 81 Am. Dec. 56; *Chatham Furnace Co.* v. *Moffatt*, above.

The rule announced by section 4978, Revised Codes, above, and by these courts, is not a new one. It was invoked by the high court of chancery of England in 1803, in the case of *Ainslie* v. *Medlycott,* 9 Ves. Jr. 13, in which Sir William Grant, Master of the Rolls, used this language: "No doubt by a representation a party may bind himself just as much as by an express covenant. If knowingly he represents what is not true, no doubt he is bound. If, without knowing that it is not true, he takes upon himself to make a representation to another, upon the faith of which that other acts no doubt he is bound, though his mistake was perfectly innocent."

In 1835 Story announced the same rule as then in effect in this country, as follows: "Whether the party, thus misrepresenting a material fact, knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a material fact by mistake, it is equally conclusive; for it operates as a surprise and imposition upon the other party." (1 Story's Equity Jurisprudence, sec. 193.)

Our conclusion is that the plaintiffs have shown themselves entitled to relief. There is not any contention made that the complaint does not state a cause of action. Apparently court and

[4]   counsel treated it as sufficient; for the merits of the contro-
versy were tried, and plaintiffs offered evidence tending to show
that they had restored to defendant everything received by them
under the contract, although there is not any specific allegation in
the complaint that they had placed the defendant *in statu quo,*
as required by section 5065, Revised Codes, and the rules of
pleading in actions of this character.   (18 Ency. of Pl. & Pr.
829; 16 Cyc. 235.)   The defendant, however, answered to the
merits, and we are inclined to treat the complaint as amended,
in view of the record as presented to us.   Neither is there any
contention over the question of damages.   The cause was tried
upon the theory that, if plaintiffs were entitled to recover at all,
they were entitled to claim as damages for the time and money
expended by them in improving the property and caring for it.
Two interrogatories submitted questions to the jury as to the
value of labor performed by plaintiffs in plowing some of the
land and putting up hay.   A third interrogatory was also sub-
mitted and answered; but it is indefinite, and we are unable to
find any evidence to support the finding made.

The judgment and order are reversed, and the cause is re-
manded, with directions to enter a decree in favor of the plain-
tiffs for the cancellation of the contract, for the recovery of
$2,000 part payment, with interest at eight per cent per annum
from July 27, 1910, for the further sum of $590, damages, as
found by the jury's special findings 6 and 7, and for costs.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.