KOCH, RESPONDENT, *v.* RHODES ET AL., APPELLANTS.

(No. 4,114.)

(Submitted March 1, 1920. Decided March 29, 1920.)

[188 Pac. 933.]

*Fraud—Contracts—Sales of Real Property—Evidence—Admissibility—Right of Action—Waiver—Excessive Verdicts.*

Fraud—Sale of Farm Lands—Value—Evidence—Admissibility.
 1.  Where land and personal property had been sold together for a lump sum, and the buyer brought suit for damages for fraudulent representations with reference to the land only, testimony concerning the value of the personal property was admissible to arrive at the contract price of the land.

---

On general rule of right to rely upon representations made to effect contract as a basis for a charge of fraud, see comprehensive note in 37 L. R. A. 593.

On purchaser's right to rely on representations made as to title to real property, see note in 39 L. R. A. (n. s.) 1143.

On waiver of fraud by compelling executory contract of sale of personal property after discovering the fraud, see note in 8 L. R. A. (n. s.) 452.

Same—Crops Produced—Fraudulent Statement of Fact—Evidence—Admissibility.

2. A statement alleged to have been made by defendant for the purpose of inducing plaintiff to buy agricultural land, that he (defendant) had never cut less than 200 tons of hay and had cut more, was not a mere expression of opinion but a statement of fact and as such admissible in evidence.

Same—Evidence—Admissibility.

3. To prove the falsity of the statement referred to in paragraph 2 above, plaintiff was rightly permitted to show that the land, though properly cultivated, produced but fifty tons of hay in what was deemed a very good year for hay.

Same—Latitude of Proof Permissible.

4. Where fraud is alleged, great latitude of proof is allowed, and every fact or circumstance from which a legal inference of fraud may be drawn is admissible.

Same—False Representations—Knowledge in Vendor—Evidence—Admissibility.

5. Statements made to a third person by defendant in attempting to secure a loan for plaintiff about the time the contract of sale between the parties was made, tending to show that he knew that representations he had made to plaintiff were false, were admissible, the fact that he acted as agent of plaintiff not rendering them inadmissible.

Same—When Vendee may Rely on Fraudulent Representations.

6. While one intending to buy has no right to rely on representations as to condition, quality, or character of property where the parties stand on an equal footing, the contrary is true where the parties have not equal knowledge, and he to whom the representations are made has no opportunity to examine the property, or where he is fraudulently induced to forego investigation.

Same—Case at Bar.

7. *Held,* under the above rule, that plaintiff was warranted in accepting defendant's representations as to the physical condition of the surface of a meadow where the former was advised by the latter that it would be impossible to inspect it without the use of rubber boots and that none were available, and as to the character of land lying across a river, upon defendant's false assertion that he had no boat at hand to make inspection possible.

Same—*Caveat Emptor*—When Rule not Applicable.

8. The strict rule of *caveat emptor* does not apply where fraud entered into the transaction.

Same—Varying Terms of Writing—Evidence—Admissibility.

9. Where land was described by government subdivisions in the contract of sale, without reference to the number of acres embraced in the tract, evidence of oral representations made to the buyer by the seller, prior to its execution, that it contained a greater acreage than it actually did, was admissible for the purpose of showing fraud in the inception of the contract, and was not objectionable as varying the terms of the writing.

Same—Remedies of Vendee.

10. A party who has been fraudulently induced to enter into a contract may either rescind, or elect to carry it out and recover damages suffered by reason of the fraud, unless he waives such right.

Same—Right of Action—Waiver—Intent.

11. By the affirmance of a contract one may waive his right to rescind as well as his right of action for damages on account of

fraud practiced upon him to induce him to enter into it, but it is only when the intention to waive is clearly manifested that a waiver will be declared.

Same—What Does not Constitute Waiver.

12. *Held*, that plaintiff's action in making a partial payment on the purchase price of the land under an alleged fraudulent contract, after commencement of suit for damages, did not amount to a waiver of his right to recover, where he notified defendant seller that the payment, then due, was made without waiver.

Same—What not Excessive Verdict.

13. A verdict for $2,500 damages for fraudulent representations on a sale of land, the contract price for which was $9,500, *held* not excessive, where eighty acres of supposedly pasture land was covered with slide rock, in addition to a deficiency of forty acres in the acreage, and a difference of 150 tons in the amount of hay per annum between what defendant claimed could be cut and that actually cut.

*Appeal from District Court, Missoula County; Asa L. Duncan, Judge.*

ACTION by W. E. Koch against George W. Rhodes and another. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Affirmed.

*Mr. William Wayne* and *Mr. Harry H. Parsons*, for Appellants, submitted a brief; *Mr. Wayne* argued the cause orally.

*Mr. Chas. H. Hall* and *Messrs. Murphy & Whitlock*, for Respondent, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This action was brought to recover damages for the alleged fraudulent representations made by the appellants to respondent in the preliminary negotiations for the sale of real estate and personal property in Missoula county. Appellants are husband and wife.

The real property consisted of two tracts of land, one known as the "home place" and the other as the "timber claim," lying across the Missoula River from the home place. The personal property consisted of farm machinery and livestock used on the

ranch, the contract price for the whole being $9,500, payable $2,000 down, $3,500 on surrender of possession, and the balance in four installments falling due annually, commencing with January 1, 1916. The contract was entered into on June 28, 1915, and respondent took possession on July 11 following, worked the ranch during the summer, and on September 30, 1915, this action was commenced, and thereafter, while the suit was still pending, paid the first note for $1,000 on January 1, 1916. The cause was tried in August, 1916, resulting in judgment being entered on verdict on August 7, 1916, for respondent for $2,500 damages. Motion for a new trial was denied, and appeal taken from the judgment and from the order denying the motion for a new trial.

The complaint alleges that prior to and at the time when the said contract was entered into the defendants personally and through their agent, one Allen Stephens, who was employed by the defendants to assist in selling the said property, for the purpose of inducing the plaintiff and with the intention of deceiving him, made certain false and fraudulent representations regarding the property, the nature of which will be taken up in the discussion of the assignments of error; that each of such representations was untrue; that they were relied upon by plaintiff and were as to material facts concerning the property; that plaintiff exercised ordinary care to ascertain the truth of the statements, but could not, with due diligence or ordinary care, learn that they were untrue, believed the representations and acted thereon, and would not have purchased the property except for such representations; that defendants occupied a position of advantage, had no reasonable grounds for believing that said statements and representations or any of them were true, and in fact knew that they were untrue. The complaint further alleges that the actual value of the property did not exceed $3,500. The answer denies generally and specifically the allegations of fraudulent representations. The appellants make twenty-one assignments of error.

1. Assignments 1 and 2 predicate error on the admission of
[1] the bill of sale of the personal property and testimony
concerning its value. There is no charge of misrepresentation
concerning this property. However, the property was sold at
a lump sum. The value of the personal property made up a
part of the total purchase price, and, in order to arrive at the
contract price of the land, it was necessary first to determine
the value of the personal property. The consideration recited
in the bill of sale was $10. The bill of sale was therefore admis-
sible to show what property was included, as was the testimony
concerning the value of such property.

2. Specifications 3 and 7 are based upon the action of the
[2] court in permitting respondent to answer, over objection,
the question: "Did he [Rhodes] make any statement as to the
amount of hay the meadow would produce?" It is contended
that, if such a statement was made, it could be no more than
an expression of opinion based on past experience as to the future
capabilities of the meadow, and that such a statement could in
no event be the basis of a charge of false representation—citing
*Butte Hardware Co.* v. *Knox,* 28 Mont. 111, 72 Pac. 301. The
holding in the case cited does not support the contention that
"in no event" could a statement of an opinion be the basis of
such a charge. What Mr. Commissioner Poorman said in the
*Butte Hardware Case* was: "Mere expressions of opinion or of
judgment do not, except in particular cases, which must be shown
by the pleading, constitute actionable fraud or false representa-
tions." This condition is met by the pleading in this case and
by the proof, and in the case of *Como Orchard Co.* v. *Markham,*
54 Mont. 438, 171 Pac. 274, this court said: "We think the fol-
lowing rule is sustained by reason and the authorities: If the
party expressing the opinion possesses superior knowledge, such
as would reasonably justify the conclusion that his opinion car-
ries with it the implied assertion that he knows the facts which
justify it, his statement is actionable if he knows that he does
not honestly entertain the opinion because it is contrary to the
facts." (See, also, 12 R. C. L. 254.)

The answer to the question was: "He said he never cut less than 200 tons of hay in any ordinary year; cut over 200 tons. He claimed he cut 236 tons in 1914." Here was no expression of opinion, but statement of facts based on his experience of years on the ranch in question.

It is urged that proof that the same land produced but fifty [3] tons in the season of 1915 was not permissible, and that its admission constituted error. The respondent testified that the year 1915 was a very good year, and that he cultivated the meadow properly. Of course, to be actionable, the statement of Rhodes, if made, must have been false and must have been known by him to be false, or have been recklessly made. It was therefore proper for respondent to prove any facts tending to show the falsity of the statement and to lead to the conclusion that Rhodes knew of its falsity. Testimony as to the yield in the succeeding year, as well as of the yield in 1913, later sworn to be but fifty-five tons, was clearly admissible for this purpose.

Where fraud is alleged, great latitude of proof is allowed, [4] and every fact or circumstance from which a legal inference of fraud may be drawn is admissible. (12 R. C. L. 429, and cases cited.)

3. Under this rule, the action of the court in permitting the [5] testimony of one Wood as to statements made to him by Rhodes in attempting to secure a loan for respondent about the time the contract was entered into was justified. It is contended that the admission of such testimony was error, as the statements were not brought to the attention of Rhodes. This contention is without merit. This was not an attempt to impeach the testimony of Rhodes, but was independent proof of facts tending to show that he knew the falsity of certain statements at the time he made them; nor does the fact that he was at the time acting as agent for respondent render the testimony inadmissible for this purpose.

4. Specification 5 is on proof of the allegation of misrepresen- [6, 7] tation as to the condition of the surface of the meadow;

it being contended that the plaintiff had made two trips to the land and had once sent his wife as his agent to inspect it, and that the representation was made as to a physical condition open to observation. It must be remembered, however, that the testimony discloses that the grass in the meadow was grown up to such an extent that it was impossible to make an examination without going all through the meadow, and that Rhodes advised respondent that it would be impossible to do so without rubber boots, of which he had none at hand. The respondent was justified under the circumstances in relying on the representations made. The facts so appearing take the case out of the rule laid down in the case of *Grindrod* v. *Anglo-American Bond Co.*, 34 Mont. 169, 85 Pac. 891, and *Lukert* v. *Eldridge*, 49 Mont. 46, 139 Pac. 999, and comes within the rule in *Post* v. *Liberty*, 45 Mont. 1, 121 Pac. 475, and *Shoudy* v. *Reeser*, 48 Mont. 579, 142 Pac. 205.

While it is generally held that one has no right to rely on representations as to the condition, quality or character of property where the parties stand on an equal footing, and have equal means of knowing the truth, the contrary is true, however, where the parties have not equal knowledge, and he to whom the representations are made has no opportunity to examine the property, or by fraud is prevented from making an examination. (12 R. C. L. 384, and large number of cases cited.) This is also true where one is fraudulently induced to forego investigation or where the representations are such as to disarm the vigilant, lull his suspicions, and induce him to refrain from making an investigation, or where by trick or artifice he was prevented from making an examination. (12 [8] R. C. L. 375, and cases cited.) The strict rule of *caveat emptor* does not apply where fraud entered into the transaction. (*Post* v. *Liberty, supra; Roberts* v. *Holliday*, 10 S. D. 576, 74 N. W. 1034.)

These rules apply equally to, and dispose of, assignments of error 6, 7, 8 and 10. No. 6 refers to testimony concerning the timber claim across the river. If the testimony of respondent

was to be believed, the appellant Geo. W. Rhodes stated positively that it would be impossible to get across the river; that there was in the neighborhood of eighty acres of bottom land on which timothy, clover and wild peas grew, furnishing pasturage for a large number of cattle, and also timber growing and bunch grass on the hillsides; that he could take his word for it; and it thereafter developed that there was little or no bottom land or pasturage, but a mountainside covered with slide rock, and that he later discovered that Rhodes, contrary to his statement, did have a boat there for the purpose of crossing the river, which statement was allowed to stand, without motion to strike. This evidence was before the jury, and whether they believed the appellant or respondent is outside our inquiry.

5. Assignment No. 10 is to the effect that the court erred in [9]  overruling objections to testimony concerning the number of acres in the tract north of the river, the home place, and to the shortage of acreage, on the ground that the written agreement between the parties superseded all prior negotiations, and that this was an attempt to add to a written agreement by parol evidence.

Reference to the written instruments referred to discloses the fact that in none of them is there any reference to the number of acres conveyed. The home place is described by government subdivisions, including fractional lots along the river. The purpose of the testimony was not to vary the terms of the written contract or to add anything thereto, but to show fraud in its inception.

Section 7873, Revised Codes, provides: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: 1. Where a mistake or imperfection of the writing is put in issue by the pleadings. 2. Where the validity of the

agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 7877, or to explain an extrinsic ambiguity, or to establish illegality or fraud. * * * ''

Section 5018 provides: ''The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.''

Here it is alleged that appellants secured the execution of the contract by fraud; one of the fraudulent representations alleged being that they misrepresented the number of acres of land contained in the home place as 158 acres, exclusive of the railroad and the river, the proof tending to show that there were but 117 acres in the entire tract, and that it had been listed for assessment at 120 acres. It is true that respondent was not seeking to set the contract aside for fraud, but we apprehend that the wording of the statute, ''to establish illegality or fraud,'' is sufficiently broad to bring the case within the exception to the rule, and the great weight of authority supports this position. In the case of *Shoudy* v. *Reeser,* above, such proof was permitted, and its propriety was not questioned by the court.

In *Petit* v. *Sinclier,* 53 Mont. 317, 63 Pac. 467, the contract for the sale of land stipulated for the conveyance of 150 inches of water, and yet the plaintiff was permitted to show, as a fraudulent representation inducing the purchase, a statement that the ranch had ''plenty of water.'' The court, in disposing of the contention that the parol evidence rule was violated, said: ''Again it is insisted 'that the written contract, having fixed the amount of water, cannot be varied by parol, and the amount of water or priority is not in issue.' * * * This is a suit to enforce a rescission for fraud inducing the contract; hence the rule invoked does not apply''—citing *Hillman* v. *Luzon Café Co.,* 49 Mont. 180, 142 Pac. 641, and *Sathre* v. *Rolfe,* 31

Mont. 85, 77 Pac. 431. In the *Hillman Case* the court said: "It is urged that no testimony of alleged representations, whether pleaded or not, was admissible because the written contract superseded all prior negotiations between the parties and presumably contains the full text of their agreement. The plaintiffs mistake the full force of defendants' position, which is that the contract was procured by false representations."

In the case of *Kelly* v. *Ellis,* 39 Mont. 597, 104 Pac. 873, relied upon by counsel for appellants, the fraud alleged consisted in an agreement that Kelly should be employed as manager of a company, and the court properly held that, if such an agreement was part of the consideration, it should have been incorporated in the contract.

Wigmore on Evidence, sec. 2439, has this to say on the subject: "In an action for deceit, or in a proceeding of rescission of contract wherever this by the law depends upon the promisor's conscious falsity, the present rule interposes no obstacle." His reason for the exception is that "since the present rule depends on the intent of the parties to embody one or more subjects of transactions exclusively in the document, it is impossible to suppose that the subject of fraud was intended thus to be covered, since by hypothesis the party upon whom fraud is practiced does not know of it, and therefore could not have had such intent." The following cases are cited from the many upholding this exception to the parol evidence rule: *Brown* v. *Le May,* 101 Ark. 95, 141 S. W. 759; *Ashley* v. *Holland* (Tex. Civ. App.), 180 S. W. 635; *Franke* v. *Kelsheimer,* 180 Iowa, 251, 163 N. W. 239; *Ruddy* v. *Gunby* (Mo. App.), 180 S. W. 1043; *Davis* v. *Nuzum,* 72 Wis. 439, 1 L. R. A. 774, 40 N. W. 497. In *Franke* v. *Kelsheimer* the court said: "The rule excluding evidence contradictory of a written instrument does not apply when fraud is the gravamen of the action or gist of the defense." In *Ruddy* v. *Gunby* it is stated that "fraud vitiates everything, and fraudulent representations * * * for the purpose of inducing a party to enter into it are not merged into the contract."

Exception is taken to the giving of certain instructions and to the modification of an offered instruction. We find no error in the action of the court in this instance, and do not consider it necessary to discuss the instructions.

6. Appellants contend that the evidence shows a condonation [10–12] of all fraud and fraudulent representations charged and waiver of all possible right of action for the same, because of the fact that respondent, after the commencement of this action, paid an installment falling due January 1, 1916. It is to be noted in this connection that respondent had been let into possession of the premises on July 11, 1915, and had paid to appellants $5,500; that he had elected to proceed under the contract rather than to rescind it, and sue for damages for the alleged fraudulent representations.

Counsel rely upon the following authorities: *Simon* v. *Shoe Co.,* 105 Fed. 573, 52 L. R. A. 745, 44 C. C. A. 612; *Kingman* v. *Stoddard,* 85 Fed. 740, 29 C. C. A. 413; *Gratz* v. *Schuler,* 25 Cal. App. 117, 142 Pac. 899; *Grindrod* v. *Anglo-American Bond Co.,* above; *Ponder* v. *Altura Farms Co.,* 57 Colo. 519, 143 Pac. 570. The case of *Ponder* v. *Altura Farms Co.* is the only case cited announcing the doctrine contended for, as applied to a contract such as we have under consideration. The first three cases deal with contracts either wholly executory at the time of the discovery of the fraud, or in their nature divisible, depending upon future delivery of commodities.

Under our statutes and under the authorities, one who has been fraudulently induced to enter into a contract has the choice of either rescinding the contract (Rev. Codes, sec. 5063) by restoring or offering to restore what he has received under the contract, and recover what he has parted with, or he may affirm the contract, keeping whatever property he may have received or advantage gained, or sue in an action for deceit for the damages suffered by reason of the fraud. While the affirmance of the contract precludes him thereafter from rescinding, he may still sue for damages, unless he waives that right. (*Como Orchard Co.* v. *Markham,* 54 Mont. 438, 171 Pac. 274.) On the

other hand: "An executory contract which has been procured by fraud is not binding upon the party against whom the fraud has been perpetrated. He may, after discovering the fraud, either perform it or rescind it; and if, with knowledge of the fraud, he elects to perform it, this is equivalent to his making a new contract, and to permit him under those circumstances to recover for fraud would be to do violence to every rule upon which compensatory damages are allowed." (*McDonough* v. *Williams,* 77 Ark. 261, 7 Ann. Cas. 276, 8 L. R. A. (n. s.) 452, 92 S. W. 783.)

In *Thompson* v. *Libby,* 36 Minn. 287, 31 N. W. 52, the supreme court of Minnesota said that to allow recovery under such circumstances "is virtually to allow a man to recover for self-inflicted injuries. The fraud is really consummated, and the damages incurred, by the acceptance of the property and paying for it." This rule was announced in the *Ponder Case,* and followed by the supreme court of Colorado, without, we feel, properly distinguishing between those cases where the contract is still wholly executory and where executed in part. In the case of *Thompson* v. *Libby,* above, the court said: "If the contract be executed in whole or in part before the fraud is discovered, it is well settled that the purchaser need not rescind, but may retain the property, and also bring his action for damages on account of the deceit." This is the rule laid down in *Haven* v. *Neal,* 43 Minn. 315, 45 N. W. 612; *Reger* v. *Henry,* 48 Okl. 759, 150 Pac. 722; *Brustman* v. *Dunn,* 161 Wis. 306, 154 N. W. 361; *Kennedy* v. *Bender,* 104 Tex. 149, 135 S. W. 524; *Minnesota Thresher Co.* v. *Gruben,* 6 Kan. App. 665, 50 Pac. 67; *Talcott* v. *Friend,* 179 Fed. 676, 43 L. R. A. (n. s.) 649, 103 C. C. A. 80; *Waite* v. *Shoemaker & Co.,* 50 Mont. 264, 146 Pac. 736; *Como Orchard Co.* v. *Markham,* above.

And while by an affirmance of the contract one may waive, not only his right to rescind, but also his right of action for the deceit, it is only when such an intention is clearly manifested that such a waiver will be declared. There is a clear distinction between the waiver of the right to rescind and the waiver of

the right of action. This is pointed out by Mr. Cooley in his work on Torts, paragraph 257, as follows: "The fraud may also be waived by an express affirmance of the contract. Where an affirmance is relied upon, it should appear that the party having the right to complain of the fraud had freely and with full knowledge of his right in some form clearly manifested his intention to abide by the contract and waive any remedy he might have had for the deception." The same rule is laid down in 20 Cyc. 93, and cases cited, and in 12 R. C. L. 158, and cases cited.

Here there was not only a lack of facts and circumstances to show clear intention to waive the right of action for damages, but the contrary clearly appeared; for respondent commenced his action before making the payment which is claimed as a waiver, and on making the payment notified appellants that this was done without waiver. It is true that in *Simon* v. *Shoe Co.,* above, it is stated that "he cannot save his right to sue for the fraud by notice that he will do so if he perform and exact performance with full knowledge of the facts which rendered performance nonobligatory"; and it is contended that this rule foreclosed the respondent. However, as heretofore pointed out, the rule in the *Simon Case* applies to those cases where the contract is, at the time of the discovery of the deceit, wholly executory, and not when executed in whole or in part. In order to affirm the contract and pursue his action for damages, it was necessary that respondent make such payments as fell due; for he could not well say that he stood on the contract and at the same time default under the terms thereof.

7. Objection is made as to the testimony introduced on behalf of respondent on the question of the value of the property. While the evidence is not satisfactory or convincing, as read from the record, it was competent testimony, considered by the jury, and cannot be disregarded by the court. In connection with the testimony of Mylander that if, as represented, the property would have been worth $9,000, it would seem that there was no attempt to evade the contract price of $9,500, counsel overlook the fact that

Mylander testified: "I leave out of my estimate of the value of the whole thing the value of the personal property." The personal property had been estimated at $500 or $550; so that Mylander's estimate of the value of the real property at $9,000 would be in conformity with the contract price.

The complaint sufficiently stated a cause of action for deceit. Evidence was introduced which, if believed, established the allegations, and that the jury did believe the evidence produced on behalf of respondents is shown by the fact that a verdict was returned in his favor for the sum of $2,500. The evidence was again reviewed by the trial court on motion for a new trial, and while, as suggested, more than six months elapsed between the time of the entry of judgment and the ruling on motion for new trial, we cannot say that the trial court did not, in the interim, review the evidence, or that such lapse of time would justify the conclusion that the trial judge had entirely forgotten the appearance of the witnesses on the stand or their manner of testifying.

Nor can we say that, if the representations alleged were made [13] and did induce the respondent to enter into the contract, the sum of $2,500 is an excessive award. The difference of over forty acres in the home place and the difference in the production of hay between fifty-five and 200 tons per annum, the condition of the orchard, and the difference in value between eighty acres of pasture land and eighty acres of mountainside covered with slide rock, might well reduce the value of the property from $9,500 to $7,000.

We find no substantial error in the record. The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLO-WAY, HURLY and COOPER concur.

Rehearing denied May 14, 1920.