## STILLWELL, RESPONDENT, *v.* RANKIN, APPELLANT.

(No. 4,054.)

(Submitted June 14, 1918. Decided June 28, 1918.)

[174 Pac. 186.]

*Contracts—Rescission—Cancellation of Instruments—Negotiable Promissory Notes—Fraud—Complaint — Injunction Pendente Lite—Evidence—Discretion.*

Contracts—Fraud—Damage—Complaint—Sufficiency.
    1. To state a cause of action for rescission of a contract for fraud, plaintiff need not allege that he suffered pecuniary loss, the statement that he suffered damage or injury being sufficient.

Same.
    2. Allegations that plaintiff was induced by defendant's fraudulent representations to assume obligations which otherwise he would not have assumed and to purchase property he would not have bought but for such representations, were sufficient to disclose damage within the meaning of paragraph 1 above.

Same—Fraud—Material Facts.
    3. To constitute actionable fraud, the representations relied upon for rescission of a contract must relate to material facts.

Same—What may Constitute "Material Facts."
    4. Representations made to a stockholder in a company by a broker that 100 shares of its capital stock had been turned back into its treasury by a subscriber unable to pay therefor and soliciting plaintiff to buy it "to help the company out," *held* to have

related to a material matter within the meaning of section 4978, defining fraud.

Same — Promissory Notes — Transfer — Injunction *Pendente Lite*—Evidence.

5. The fact that defendant's evidence contradicted the allegations of the complaint, which was verified positively and thus had the effect of an affidavit, did not deprive the district court of power to grant an injunction restraining defendant from transferring promissory notes pending suit for their cancellation for fraud.

Promissory Notes—Transfer—Injunction *Pendente Lite*—Discretion.

6. Courts of equity are inclined to be liberal in restraining *pendente lite* the transfer of negotiable promissory notes alleged to have been procured by fraud, when such transfer will defeat the right of the makers to interpose their defense as against holders in due course.

[As to stockholders' subscriptions as affected by fraud, see note in 3 **Am. St. Rep.** 824.]

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by James L. Stillwell against A. L. Rankin. From an order granting an injunction *pendente lite*, defendant appeals. Affirmed.

*Mr. C. A. Spaulding,* for Appellant, submitted a brief, as well as one in reply to that of Respondent, and argued the cause orally.

Unless the complaint states a cause of action, the order of the court below enjoining the transfer or assignment of the notes in question can find no justification. Injunction is only authorized, under our statute, upon the filing of a complaint setting forth adequate grounds for injunctive relief. There is no allegation in the complaint that the stock to be delivered is not worth the full amount of the notes; hence, even if the notes were negotiated and respondent was obliged to pay them, he does not show that he would suffer any damage. Without such an allegation the complaint is fatally defective, for it is elementary that equity will not interpose if no wrong is about to be perpetrated or damage suffered. Indeed, so far as that is concerned, there can be no actionable fraud unless it results in damage to someone. (*Carpenter Paper Co.* v. *News Pub. Co.,* 63 Neb. 59, 87 N. W. 1050; *Power & Bro.* v. *Turner,* 37

Mont. 521, 97 Pac. 950; *Butte Hardware Co.* v. *Knox,* 28 Mont. 111, 72 Pac. 301; *Shoudy* v. *Reeser,* 48 Mont. 579, 142 Pac. 205; *Taylor* v. *Guest,* 58 N. Y. 262; *Pforzheimer* v. *Selkirk,* 71 Mich. 600, 40 N. W. 12; *Southern Development Co.* v. *Silva,* 125 U. S. 247, 31 L. Ed. 678, 8 Sup. Ct. Rep. 881; *Morrison* v. *Lods,* 39 Cal. 381; *Robertson* v. *Parks,* 76 Md. 118, 24 Atl. 411; *Gerner* v. *Yates,* 61 Neb. 100, 84 N. W. 596.)

Where, on the return on an order to show cause why an injunction *pendente lite* should not issue, the defendant appears and controverts the allegations of plaintiff's complaint, and plaintiff offers no evidence other than such complaint, as was done in this case, the injunction must be denied. (*Rea Brothers Sheep Co.* v. *Rudi,* 46 Mont. 149, 127 Pac. 85.)

Regardless of the foregoing, and upon the merits as disclosed upon the hearing on the order to show cause, it was an abuse of discretion for the court below to continue this injunction *pendente lite.* Fundamental rules relating to the law of injunctions required the court below to deny the application. (See *Campbell* v. *Flannery,* 29 Mont. 246, 248, 74 Pac. 450.)

But if the complaint did allege actionable fraud, respondent has a plain, speedy and adequate remedy at law (Spelling on Injunction, sec. 13) by way of an action for damages.

*Messrs. Freeman & Thelen,* for Respondent, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

The cases of *Newhall* v. *Enterprise Min. Co.,* 205 Mass. 585, 137 Am. St. Rep. 461, 91 N. E. 905; *Davis* v. *Foreman,* 229 Mo. 27, 129 S. W. 213; *McDoel* v. *Ohio etc. Co.* (Ky.), 36 S. W. 175; *Ogden Valley T. & R. Co.* v. *Lewis,* 41 Utah, 183, 125 Pac. 687, hold that, when a vendor of stock represents to the vendee, as an inducement to enter into a contract, he will sell him stock of a certain kind, either stock that belongs to other people or stock that is in the treasury of the company, the purchaser is entitled to receive the stock represented to be sold and not compelled to take any other; and that if the vendor then offers to deliver stock which he has himself or which is not treasury

stock, and which is not in the possession of the corporation, the vendee has a right to rescind the contract on the grounds of false and fraudulent representation, in order to avoid liability on the contract. (See, also, *Spreckels* v. *Gorrill,* 152 Cal. 383, 92 Pac. 1014; *Stern* v. *Kerby Lumber Co.,* 134 Fed. 509; *Harlow* v. *La Brum,* 151 N. Y. 278, 45 N. E. 859.)

In an action praying for an injunction *pendente lite,* the equitable principles applicable to an injunction *pendente lite* and to mandatory injunction are not in common, and the courts are more liberal in granting the former than the latter. (Note in 38 L. R. A. (n. s.) 228.) Under *Rea Bros. Sheep Co.* v. *Rudi,* 46 Mont. 149, 159, 127 Pac. 85, the trial court has the discretionary power to grant an injunction *pendente lite,* when it is left doubtful whether the plaintiff will suffer irreparable injury before his rights are fully determined and investigated. (*Welton* v. *Dickson,* 38 Neb. 767, 41 Am. St. Rep. 771, 22 L. R. A. 496, 57 N. W. 559.)

If the maker of a note has good grounds for avoiding the note as against the payee, and which he is taking advantage of by his legal remedies, but which are of such a nature that as against a subsequent purchaser for value before maturity they are no defense, and is deprived of his defenses as to the notes during the litigation by the negotiation of them, is he not irreparably injured, especially when there are some doubts as to the appellant's solvency? (*Oliphant* v. *Richman,* 67 N. J. Eq. 280, 59 Atl. 241; *Cole* v. *Manners,* 76 Neb. 454, 107 N. W. 777.) In the case of *Currie* v. *Jones,* 138 N. C. 189, 50 S. E. 560, it was stated: "In a suit to recover shares of stock in a corporation, injunctive relief against the defendant's disposal of the shares being more beneficial and complete than any relief available at law, is more readily granted than in the case of ordinary personal property." And what is true about negotiable stocks should be more true about negotiable notes. (*Wilcox* v. *Ryals,* 110 Ga. 287, 34 S. E. 575; *Atkinson* v. *Cain,* 61 W. Va. 355, 123 Am. St. Rep. 984, 56 S. E. 519; *Thurman* v. *Burt,* 53 Ill.

129; *Bridges* v. *Robinson*, 2 Tenn. Ch. 720; *Johnson* v. *Powell*, 34 Tex. 528; 1 Spelling on Injunctions, p. 86.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This suit was brought to secure the rescission of a contract for the purchase of certain shares of stock of the State Life Insurance Company of Great Falls; to secure the cancellation of three promissory notes representing the purchase price, and, by way of ancillary relief, to secure an injunction restraining the defendant from transferring the notes pending the litigation. After a hearing upon the return of an order to show cause, an injunction *pendente lite* was issued and defendant appealed from the order. Three principal questions are presented:

1. It is urged that the complaint does not state a cause of action because (a) it does not allege that plaintiff has suffered pecuniary loss, and (b) it does not disclose that the alleged misrepresentations concerned *material* facts.

(a) Is it essential to the statement of a cause of action for [1] rescission of a contract for fraud that the plaintiff allege that he has suffered pecuniary loss? Authorities may be found which answer in the affirmative and most emphatically, but curiously enough do not insist that the amount of such loss is material, if it is at all appreciable. In 2 Pomeroy's Equity Jurisprudence, section 898, it is said: "Fraud without resulting pecuniary loss is not a ground for the exercise of remedial jurisdiction, equitable or legal. * * * If any pecuniary loss is shown to have resulted, the court will not inquire into the extent of the injury; it is sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable." We do not feel called upon to follow this text.

It is axiomatic in the law that, if it is necessary to allege a particular fact, it is equally necessary to prove it, if the allegation is put in issue. It certainly could not be said that it would be sufficient for plaintiff to allege that as a result of the fraud

he suffered damage "in an appreciable amount" or suffered "material damage" or "substantial damage." Any one of these allegations would render the pleading subject to demurrer under section 6534 of our Codes. If it is necessary to allege pecuniary loss, it is necessary to allege the amount of such loss; but section 6532, Revised Codes, provides, "if the recovery of money or damages be demanded, the amount must be stated," and this provision is exclusive. "*Expressio unius est exclusio alterius.*" This is not an action for the recovery of money or damages, and therefore it is not necessary to allege that plaintiff suffered pecuniary loss.

Courts of equity, like courts of law, however, do not concern themselves with wrongs which do not produce injury; but "injury" and "pecuniary loss" are not synonymous terms. In *Shoudy* v. *Reeser,* 48 Mont. 579, 142 Pac. 205, this court stated the rule that, to make out a case of actual fraud, it is necessary for plaintiff to allege: (1) That defendant made representations with the intent that they should be relied upon; (2) that they were false; (3) that they were accepted as true and plaintiff was induced to act upon them; and (4) that by reason of the fraud plaintiff suffered damage. These are the elements recognized by the authorities generally. Most of the courts and text-writers employ the term "damage" in the sense of injury; a few restrict its meaning to financial loss. We prefer to adhere to the rule which gives to the term its broader significance, as including either pecuniary loss or the alteration of one's position to his prejudice. Fraud may result in injury which cannot be measured in dollars and cents. Indeed, if the rule for which appellant contends be accepted, then insolvency of the defendant alone determines the jurisdictional question, for it is inconceivable that any injury which can be measured by a money standard cannot be redressed by an action at law if the guilty party is financially responsible. But insolvency is not the sole determining factor in suits of this character, and upon this the authorities are generally agreed.

If the allegations of this complaint are true, plaintiff was in-
[2]    duced by fraudulent representations to assume obligations
which otherwise he would not have assumed and to purchase
property which otherwise he would not have purchased.    We
deem the allegations sufficient to disclose damage within the
meaning of that term which we adopt.

(b) It is elementary that, to constitute actionable fraud, the
[3, 4]    representations must relate to material facts, and this
upon the theory that "the law disregards trifles." (Sec. 6201,
Rev. Codes.)_ It is alleged that in August, 1916, defendant and
H. L. Moore, knowing that plaintiff was a stockholder in the
State Life Insurance Company of Great Falls, and representing
that defendant was "the head man" of the company, stated to
plaintiff that 100 shares of the stock had been turned back to
the company by a subscriber who was unable to pay for it, and
solicited plaintiff to purchase the stock "to help the said com-
pany out," knowing that plaintiff understood that he was asked
to purchase treasury stock; that these representations were false
and known by defendant to be false; that they were made with
the purpose of defrauding plaintiff; that they were relied upon
by him; that in reliance thereon he agreed to purchase the stock
(which otherwise he would not have purchased) and gave the
notes in controversy.    Do these representations refer to mate-
rial facts within the meaning of section 4978, Revised Codes,
defining fraud?    There is no hard-and-fast rule for determin-
ing this question.    Every case must be decided upon its own
peculiar facts and circumstances.    It is conceivable that a
stranger to the company who had ready money seeking invest-
ment would decline to purchase its stock even though it might
appear to be a profitable venture. _It is likewise conceivable
that a stockholder in the company, seeking further investments,
would refuse to purchase more stock in the same company, even
though he knew it was prosperous and gave promise of liberal
returns in dividends.    He might reasonably prefer to distribute
his investments.    We think it equally consonant with reason
and business experience that a stockholder might assume bur-

densome obligations to purchase treasury stock of his company in order to increase its working capital, promote its opportunities for extended operations, stabilize the value of his own outstanding stock, or enhance the chances of better returns by way of increased dividends, when he would be altogether unwilling to purchase privately owned stock at the same price. He might be willing to relieve his company of embarrassment or himself of the possibility of loss upon the stock already owned, but unwilling to relieve a stranger from the embarrassment consequent upon his having contracted for stock in the same company. In any event, a man is entitled to receive the property he contracts to purchase and cannot be required to accept in lieu thereof something else, even though it has equal value. (*Newhall* v. *Enterprise Min. Co.*, 205 Mass. 585, 137 Am. St. Rep. 461, 91 N. E. 905.) We think these representations concern material facts and that, if made and if the other elements of fraud are present, they furnish sufficient basis for rescission. (1 Cook on Stock and Stockholders, 7th ed., sec. 145; *Ogden Valley T. & R. Co.* v. *Lewis*, 41 Utah, 183, 125 Pac. 687.)

2. Appellant contends that every material allegation of the [5] complaint was put in issue by defendant's testimony, and therefore an injunction should not have been granted. In support of his position, he invokes the rule announced in 22 Cyc. 945, 946, and recognized by this court in *Rea Bros. Sheep Co.* v. *Rudi,* 46 Mont. 149, 127 Pac. 85, to the effect that if, in response to an order to show cause, the defendant puts in issue all the material allegations of the complaint and plaintiff fails to offer evidence in support, the court will generally deny the injunction. But that rule is not an absolute one. The same authority proceeds: "But notwithstanding positive denials under oath in the answer, the court has discretion to grant a preliminary injunction and it will not be denied as of course."

The complaint in this instance was verified positively and not upon information and belief. It was offered in evidence upon the hearing and had the effect of an affidavit. (22 Cyc. 941.)

In so far as the evidence tendered by defendant contradicted the allegations of the complaint, it raised an issue as to the credibility of the plaintiff on the one hand and defendant on the other; for the only evidence produced by defendant material to this inquiry was furnished by his own testimony. He introduced the testimony of Jas. B. Walsh, F. E. Beatty, and himself. The testimony of Walsh and Beatty tended to show that Walsh had subscribed for 100 shares of the capital stock of this company at $15 per share, had given his notes to represent the purchase price, and had not paid the notes nor the interest on them; that all the capital stock of the company had been sold in 1913, and none of it had ever been turned back to the company; that defendant, acting in the capacity of a broker, was seeking to resell Walsh's stock for commission in amount equal to the difference between what Walsh owed the company (about $2,200) and whatever he could realize on a resale (in this instance $3,000); and that the company was not interested in the resale of this stock. The defendant testified that it was the Walsh stock which he intended to deliver to plaintiff and which he had in mind when the contract with plaintiff was executed. He denied that he represented that he was offering for sale treasury stock or solicited plaintiff to help out the company. We refrain from commenting upon the remainder of his testimony. The trial court occupied the more advantageous position, in that the witness was present in person, and his demeanor on the stand, his apparent candor or lack of it, and all the other elements which enter into the determination of his credibility, were open to scrutiny.

3. It is contended that, in any event, the court abused its [6] discretion in granting the injunction; but with this we are unable to agree. Courts of equity are inclined to be liberal in restraining *pendente lite* the transfer of negotiable promissory notes alleged to have been procured by fraud, when such transfer will defeat the right of the makers to interpose their defense as against holders in due course. (2 High on Injunctions, sec. 1126; Bispham's Principles of Equity, sec. 459; *Os-*

*born* v. *United States,* 9 Wheat. 738, 6 L. Ed. 204; 22 Cyc. 840.)
The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

Motion for rehearing denied October 21, 1918.

