ADVANCE-RUMELY THRESHER CO., INC., APPELLANT, v.
WENHOLZ ET AL., RESPONDENTS.

(No. 6,145.)

(Submitted June 4, 1927.   Decided July 16, 1927.)

[258 Pac. 1085.]

*Sales—Promissory Notes—Lack of Consideration—Fraudulent
Representations—Burden of Proof—Rescission—When Delay
not Waiver.*

Sales—Promissory Notes—Lack of Consideration Because of False
Representations—Evidence—Sufficiency.
  1.  In an action to recover on promissory notes given for the
  purchase of farm machinery, in which the defense was lack of
  consideration because of false and fraudulent representations made
  by the agent of plaintiff relative to the merits of the implements
  and other matters, which representations were the inducing cause
  for making the purchase, evidence *held* sufficient to establish the
  defense and to warrant a directed verdict in favor of defendants.
Same—Fraud—Burden of Proof.
  2.  One who relies on fraudulent representations to defeat an
  action on a promissory note given for the purchase of chattels
  has the burden of proving that the statements were the inducing
  cause for signing the note; that they were material and false;
  that the speaker had knowledge of their falsity or was ignorant
  of their truth and intended that they should be accepted and
  acted upon; that the defendant was ignorant of their falsity and
  rightfully relied upon their truth, not having equal means of
  knowing the truth or opportunity to examine the property, and
  that his damage proximately resulted from the representations.
Same—Promissory Notes—Fraud—Rule That Written Contract may not
be Varied by Parol Testimony Inapplicable, When.
  3.  Where a contract is sought to be avoided on the ground that
  the party bound was induced to enter into it by his opponent's
  fraudulent representations, the latter is not in a position to invoke
  the rule that a contract in writing may not be varied by parol
  testimony to prevent the former from testifying to such representa-
  tions made during preliminary negotiations.
Same—Rescission—Delay Does not Amount to Waiver, When.
  4.  While a party seeking to avoid a contract on the ground
  of fraud must rescind promptly on discovery of the fraud or he
  will be deemed to have ratified it and waived his right to rescind,
  where the purchasers of farm machinery soon after discovery of
  defects notified the seller and were repeatedly assured that they

2.  See 3 R. C. L. 1105; 12 R. C. L. 424.
3.  See 10 R. C. L. 1058.
4.  See 4 R. C. L. 515.

would be remedied but without result, the delay in rescinding, caused by such promises, was justified and did not amount to a waiver of their right to rescind.

---

[1] Sales, 35 Cyc., p. 84, n. 13, p. 573, n. 75.
[2] Contracts, 13 C. J., sec. 652, p. 611, n. 95; sec. 659, p. 612, n. 33. Fraud, 26 C. J., sec. 6, p. 1062, n. 50. Sales, 35 Cyc., p. 84, n. 13.
[3] Evidence, 22 C. J., sec. 1623, p. 1218, n. 83.
[4] Sales, 35 Cyc., p. 152, n. 44, p. 154, n. 55.

*Appeal from District Court, Rosebud County; G. J. Jeffries, Judge.*

ACTION by the Advance-Rumely Thresher Company, Inc., against Charles C. Wenholz and others. From a judgment for defendants, plaintiff appeals. Affirmed.

*Mr. M. J. Lamb,* for Appellant, submitted a brief and argued the cause orally.

Defendants made no claim for damages either for breach of warranty or for deceit, nor did they rely upon breach of warranty as a defense. They expressly limited their defense simply to the theory that they had extinguished the contract of sale because of alleged fraud. Counsel for defendants by thus banishing the ambiguities of their amended answer and fixing the theory of their defense precluded themselves from urging rescission because of any alleged breach of warranty, a discussion of the application of the provisions of the contract to that defense is not pertinent. In any event such a contention could not be sustained because the contract in question had been fully executed and no showing was made that the alleged warranties were intended to operate as a condition. Section 7624, Revised Codes 1921, provides: "The breach of a warranty entitles the buyer to rescind an agreement for sale, but not an executed sale, unless the warranty was intended by the parties to operate as a condition." (*Doornbos* v. *Thomas,* 50 Mont. 370, 147 Pac. 277; *Rickards* v. *Aultman & Taylor Co.,* 64 Mont. 394, 210 Pac. 82.) Counsel for appellant contends, therefore, that there is, and can be

under the record of this case, but the one issue: whether under the showing made by the defendants it can be said that they rescinded the sale of the machinery.

The evidence is insufficient to show fraud. Nonperformance of a promise is not fraud. (*Roman* v. *Lorence*, 162 Minn. 198, 202 N. W. 707; 35 Cyc. 367–369; *International Harvester Co.* v. *Merry*, 60 Mont. 498, 199 Pac. 704.) The oral representations claimed to have been made by Turpening amounted to no more than an assurance or warranty, even though it could be said that they were fraudulently made. (*Bates Tractor Co.* v. *Gregory*, 199 Mich. 8, 165 N. W. 612; *Rock Island Implement Co.* v. *Wally* (Mo. App.), 268 S. W. 904, 913.) No contention was made by the defendants that Turpening resorted to trick or artifice in order to procure their signatures to something that they did not intend to sign, nor was there any claim of fraud extrinsic to the subject matter of the contract. The defendants attempted to establish the representations made by Turpening as the contract of sale. Those representations, if made, were at variance with and contradictory of the written contract, and were, therefore, inadmissible. (*Hansen* v. *Daniel Hayes Co.*, 152 Minn. 222, 188 N. W. 317; 35 Cyc. 367–369; *Colonial Development Corp.* v. *Bragdon*, 219 Mass. 170, 106 N. E. 633; *Youngs* v. *Advance-Rumely Thresher Co.*, 215 Mich. 682, 184 N. W. 535.)

The evidence is insufficient to show rescission because it shows that the defendants waived any right to rescind by reason of the alleged fraudulent representations, and discloses that the defendants accepted the machinery and ratified the contract of sale. The defendants used the threshing outfit extensively throughout the threshing seasons of the years 1914 and 1915. "A contract must be promptly rescinded upon discovery of fraud or it will be regarded as having been ratified." (*McConnelly* v. *Blackley*, 66 Mont. 510, 214 Pac.

64; *Ott* v. *Pace,* 43 Mont. 82, 115 Pac. 37; sec. 7567, Rev. Codes 1921.)

The defendants were present at Forsyth when the engine was delivered by the seller, and had the engine been a second-hand engine that fact could, and should have been, readily discernible. "One investigating for himself or having the means at hand to ascertain the truth or falsity of representations relied upon by him cannot complain thereof, however false." (*Morehouse* v. *Northern Land Co.,* 68 Mont. 96, 216 Pac. 792; *Helena Adjustment Co.* v. *Claflin,* 75 Mont. 317, 243 Pac. 1063.)

Retention of possession by the buyer, and subsequent exercise by him of any of the rights of ownership, unalterably ratify the contract. (*McCoy* v. *Prince,* 11 Ala. App. 388, 66 South. 950; *Hodgkins* v. *Dunham,* 10 Cal. App. 690, 103 Pac. 351; *Riverside Fiber & Paper Co.* v. *Benedict Paper Co.* (Mo. App.), 201 S. W. 584, 587; *St. Louis Carbonating etc. Co.* v. *Loevenhart* (Mo. App.), 190 S. W. 627; *Thomas Bros.* v. *Puffer Mfg. Co.,* 211 Ky. 695, 277 S. W. 1022; *Brumbaugh* v. *Mellinger,* 68 Ind. App. 410, 120 N. E. 676; *Friedman* v. *Richman,* 213 App. Div. 467, 210 N. Y. Supp. 648; *Scriven* v. *Hecht* (C. C. A.), 287 Fed. 853.)

In *Kelsey* v. *Ringrose Net Co.,* 152 Wis. 499, 140 N. W. 66, the court said: "A period of two and one-half months experimentation would seem to be an unreasonable length of time." (See, also, *Board* v. *Emerson-Brantingham Implement Co.* (Tex. Civ. App.), 203 S. W. 421; *Acme Harvesting Co.* v. *Carroll,* 80 Neb. 594, 114 N. W. 780; *John D. Gruber Co.* v. *Smith,* 195 Mich. 336, 162 N. W. 124, 129; *Pratt-Gilbert Co.* v. *Hildreth,* 24 Ariz. 141, 207 Pac. 364; *Geiser Mfg. Co.* v. *Lunsford* (Tex. Civ. App.), 139 S. W. 64; *J. I. Case Threshing Machine Co.* v. *Feezer,* 152 N. C. 516, 67 S. E. 1004; *Hillman* v. *Luzon Cafe Co.,* 49 Mont. 180, 142 Pac. 641; *Waymire* v. *Shipley,* 52 Or. 464, 97 Pac. 807; *Houston*

[80 Mont. 82.]

Motor Car Co. v. Brashear (Tex. Civ. App.), 158 S. W. 233; J. B. Colt Co. v. Fuller (Miss.), 110 South. 427.)

Messrs. Campbell & Carolan, for Respondents, submitted a brief; Mr. T. W. Carolan argued the cause orally.

Citing: Lee v. Stockmen's Nat. Bank, 63 Mont. 262, 207 Pac. 623; Koch v. Rhodes, 57 Mont. 447, 188 Pac. 933; Post v. Liberty, 45 Mont. 1, 121 Pac. 475; Como Orchard Co. v. Markham, 54 Mont. 438, 171 Pac. 274; Connelly Co. v. Schlueter Bros., 69 Mont. 65, 220 Pac. 103; Geiser Mfg. Co. v. Lunsford (Tex.), 139 S. W. 64; Hart-Parr Co. v. Duncan, 75 Okl. 59, 4 A. L. R. 1434, 181 Pac. 290; Noel v. Garford Motor Truck Co., 111 Wash. 650, 191 Pac. 828, 830; Ray Motor Co. v. Stanyan, 123 Me. 346, 122 Atl. 874; J. I. Case Threshing Machine Co. v. Huber, 160 Mich. 92, 32 L. R. A. (n. s.) 212, 125 N. W. 66; Advance-Rumely Thresher Co. v. Yancy, 100 Okl. 197, 229 Pac. 149.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff to recover from the defendants the sum of $2,650 on six promissory notes executed by the defendants to the Rumely Products Company on August 17, 1924, for the purchase price of a steam tractor engine, a grain separator with attachments, and an Oliver six-bottom gang plow. These notes were secured by a purchase price chattel mortgage on the equipment sold and delivered to the defendants. Upon default in payment of the notes, under power of sale contained in the mortgage, the property was sold for the net sum of $970, which was by the plaintiffs credited upon the indebtedness. The money so applied, together with the sum of $100 paid on account on November 24, 1914, shortly after the execution of the notes, was the only money paid on account thereof. The complaint, after setting forth the execution and delivery of the notes to the Rumley Products Company, avers that thereafter and

before the maturity of any of them the Rumely Products Company, "for a valuable consideration, sold, assigned, indorsed, transferred, and delivered each and all of said promissory notes together with the chattel mortgage * * * to Rumely Company, a corporation"; which latter company in turn "sold, assigned, indorsed, transferred and delivered each and all of said promissory notes and said chattel mortgage to this plaintiff, who is now the owner and holder thereof." The answer made certain admissions and denials of the averments made in plaintiff's complaint, and in defense of the liability of the defendants for the amount remaining unpaid on the promissory notes affirmatively pleaded want of consideration because of certain false and fraudulent representations made by the agent of the Rumely Products Company at the time of and by way of inducement for the execution of the notes. Issue was joined by a reply, and the cause was tried to the court sitting with a jury. At the conclusion of all of the evidence, both parties moved the court for a directed verdict. The court thereupon granted the defendants' motion, and judgment was entered for the defendants accordingly. The appeal is from the judgment.

Plaintiff's several assignments of error present for determination the sole question as to whether the court erred in granting the defendants' motion for a directed verdict.

It appears that on July 29, 1914, the defendants executed [1] a written contract with the Rumely Products Company, through its agent, Al Turpening, for the purchase of an Advance 26-horsepower "single cylinder" steam engine, a separator and an Oliver plow, together with equipment for all. By the terms of the agreement, upon the delivery of the chattels covered thereby, the defendants were to receive the property subject to the terms and warranties therein stated, and to pay therefor by the execution and delivery of the promissory notes made the basis of this action; and it was further provided in the contract, that "said machinery is

warranted to be well made and of good material, and with proper use capable of doing as good work as any other machines of the same kind, size, and rated capacity, working under like conditions, but any machine or part thereof not manufactured for or by the vendor, or which is second-hand, rebuilt, or repaired, is not warranted, by statute or otherwise. * * * There are no representations, warranties, or conditions, express or implied, statutory or otherwise, except those herein contained, and no agreement collateral hereto shall be binding upon vendor unless in writing hereupon or attached hereto and accepted by vendor or its home office.''

Over plaintiff's objection, the defendants were by the court permitted to prove that by way of inducement to the defendants to make purchase of the property and execute the contract, Al Turpening, as agent for the Rumely Products Company, had before the contract was executed, although on the same day, represented to the defendants that the engine and separator were new and not second-hand; that the engine would be capable of pulling the separator anywhere on the field or on the road and would pull eight or ten plows; and that it would be in first-class condition and ''everything in running order and good shape.''

The defendant Wenholz, manager of the association of men who made purchase of such supplies and equipment, testified in substance: ''We ordered a threshing outfit from the Rumely Products Company or its agents. By we, I mean myself and the other defendants. The names of the men with whom I dealt was Bob Forney and Al Turpening. I only knew Mr. Turpening as an agent coming around. I never met him before. Q. How did Turpening represent himself? A. He represented to be an agent for the Rumely Products Company. He was trying to sell us a 26 horse power single cylinder engine, rear mounted, and a 34–56 separator, including a weigher, wind stacker, thresher, water tank, pump, hose, belt, and 8-bottom plow—Oliver plow.''

[80 Mont. 82.]

Before the contract for the purchase of the equipment was executed by the defendants, Turpening represented to the witness and his associates that the engine and separator were new, and in the course of negotiations the defendants told Turpening that they wanted an engine with which to thresh and to pull the separator, and also to pull an eight-bottom plow. Turpening was acquainted in the country, and most of the negotiations were conducted on the ranches or homesteads of the defendants, and none of the machinery was in Rosebud county where it could be examined by the defendants. As to the power of the engine, Turpening represented that it would be capable of pulling the separator anywhere in the field or on the road, and that it would pull ten-bottom plows in sod. He said the engine would be new and in first-class condition, and the defendants all placed reliance on his representations. Further, the witness states: "I had not used any such machinery as we were ordering from the Rumely Company, and had no previous experience with it, and relied on the statement made by the agent Turpening. We would not have bought any of those articles if these statements had not been made to us."

The type of engine ordered was an Advance one-cylinder simple engine, 26-horsepower. The negotiations with Turpening were had just previous to the signing of the contract by the defendants, on the twenty-ninth day of July, 1914, and as a result thereof the defendants were induced to sign the contract. The engine was delivered at Forsyth on August 16, 1914, and the notes in suit were thereupon executed on the following day. Upon delivery the engine was found to be a compound rather than a simple one-cylinder engine, as ordered. The engine looked new, but proved to be a second-hand engine. Many of the articles ordered were not delivered with the engine. A main drive belt was missing, and the plows were not delivered until about two months later. The defendants did not try to put the plows to use until a year

and three or four months after the receipt of the engine.  The witness further testified: "When the engine and separator arrived here we were called upon to unload it over at the N. P., on the loading chute, and it had water in it, and we undertook to steam it up.  We did so, and this man Turpening, the Rumely man, he undertook to back down off of the car on the loading platform, and when he got it halfways off it stalled and he couldn't move it, couldn't do nothing with it; it was impossible to move it under its own power.  We finally went to work and had to unload it by hand.  After we had unloaded it, it stood there a number of days before they got a man from Billings to repair it.  We started out with it and got over as far as the Milwaukee depot, and it stood there two or three days; it failed to pull itself, so we run the separator up the hill, and when it got on top of the hill on the north side we were stalled there for a day or two, and that way it kept continually on.  It is impossible to enumerate the number of times it failed to pull itself or to do the business either in threshing or traveling on the road.  Before the contract was signed Turpening said the engine would do the work in threshing and pull the outfit on the road anywheres and pull the plows and give perfect satisfaction.  We tried to use the engine in the fall of 1914.  We had all sorts of trouble with it.  At first, when experts come down, they would never tell us anything.  I asked two of them, sent out from Billings; they wouldn't give me no satisfactory answer, but after a while we went to work and examined the engine thoroughly when we couldn't get a man—they said it was impossible to give us a man—and I went to work and took off the plate on the low pressure cylinder and I found the valve had slipped.  And when we went along, further examination, we found that the oil pump on the engine was entirely wrong, that it wouldn't pump the oil; instead of pumping it into the cylinders along the lead pipe with the steam, they had connected it up so it pumped the wrong way.  We used this

engine during the season of 1914 and during the season of 1915 for threshing. The engine did not work satisfactorily during any of the time we used it. I couldn't give the date when we discovered that the engine was second-hand, but it was the first fall, during the first season; it was some time, I presume, some time in September. I discovered it when Turpening let the cat out of the bag one day. He said that engine had been demonstrated with in Billings, and the party they figured on selling it to, he turned it back because it was unsatisfactory. When these articles were received in Forsyth we made an objection or protest to the representative of the company. We told him that the outfit wasn't what we had ordered; we had ordered a simple engine and this was a compound engine. It was bigger than we had ordered in the first place. He replied that they would make that all right, but it was the only thing they had. He said that if it did not give satisfaction they would remedy it by giving us another engine. During the time we had this machine we attempted to have the tractor pull the plows. It was impossible to pull the plows we had. It would pull three plows in sandy soil. It never pulled more than three. The engine at any time we had it wouldn't ever pull ten bottom plows in sod, or any more than three. We kept the engine as long as we did on the promises of the Rumely people that they was trying to make it satisfactory, or, if this engine wasn't what we could use, they was going to give us one we could use. They said at one time, in 1914, they said they would give us, or for the coming year they would give us an engine that would give us satisfaction. They did not do it. We made innumerable complaints to the Rumely Company concerning this machinery. Twice they sent us men to repair the engine, and then toward the last end, before we—when we started plowing they sent us a man to start the plows. The first two men repaired the engine. They simply set the valves. Thereafter, at one time, the engine worked just about for four hours.

[80 Mont. 82.]

After these repairs or at any time, with reference to pulling the separator, the engine operated very poor. It had an awful hard effort to pull the separator; if we got on a little knoll you would have to drive around one way or another; sometimes we had to hitch a team on to help it up. The best results we had was when coming down a hill, and the valves slipped and the engine stood on the side of the hill and wouldn't run down itself—a pretty fair incline. On level ground it would pull three plows at the rate of two and one-half or three miles an hour. It made a pretty hard job of pulling the separator over the fields. Lots of times we would get along twenty rods, sometimes only four or five rods; then the valves would slip and we would have to cool the engine off so we could set the valves so we could go on again. We offered to return the machinery and the goods to the Rumely Company on at least three occasions—I can't positively remember. The first occasion was after we had it about two weeks. I wrote to the Rumely Company personally myself. I didn't get no response. The last time was about three weeks after we had the machinery. I made the offer orally to a representative here in Forsyth. I talked to Turpening and Bob Forney both here at Forsyth. I told them I wished they would go to work and return us our papers because their machinery did not come up to standard or give us any satisfaction at all; I didn't want to bother with it any more because it was too expensive. They says they was going to see the company and see what they would do about it. The last offer was the time when we was operating the plows. I made that offer to a man whose name was Burns; he was a collector of the company. I told him the machine was there and he could take it and return our papers. That was about the tenth day of October, 1915. We never made any use of the machinery after that time. It was following that in the year 1916, some time in the fall, that the mortgage was foreclosed, and October

10th of 1915 was the last time we endeavored to use any of this machinery.''

Such testimony was corroborated by other witnesses and is not disputed. Therefrom the question for decision presented to the district court and to this court is whether the defendants have established their defense of want of consideration for the notes because of fraud. We are of opinion they did so, and that the court acted according to the law in granting their motion for a directed verdict.

No question is raised or argued as to the right of the defendants to defend in this action by the Advance-Rumely Thresher Company, as the assignee of the original holder of the notes, because of alleged fraud inducing the execution of the contract with the original payee of the notes, the Rumely Products Company. We will raise none, and shall treat the contract as though made by the plaintiff as the original vendor and payee named in the notes. This was the theory of court and counsel on the trial as well as on the appeal.

The statute provides that a party to a contract may rescind [2] where the consent of the party rescinding was obtained through fraud, or where, through the fault of the party as to whom rescission is made, the consideration of the obligation fails, in whole or in part. (Sec. 7565, Rev. Codes 1921.) And by section 7480 actual fraud within the meaning of the chapter is said to consist of any of the following acts ''committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3. The suppression of that which is true, by one having knowledge or belief of the fact; 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive.'' (Id. 7480.)

In construing these statutes, in the case. of *Post* v. *Liberty,* 45 Mont. 1, 121 Pac. 475, it was by this court said that section 7565 provides "that a party to a contract may rescind, if his consent is obtained by fraud, or if, through the fault of the other party, the consideration for the obligation fails, in whole or in part. The term 'fraud,' as used above, includes: ' (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true.  *  *  *  (5) Any other act fitted to deceive.' (Rev. Codes, sec. 4978 [now sec. 7480].) The question of good or bad faith is not involved. The fraud arises from the fact that the statement is not true; and coming from one who ought to know whereof he speaks, the effect of his statement is to deceive the intending purchaser."

In the case of *Lee* v. *Stockmen's Nat. Bank,* 63 Mont. 262, 207 Pac. 623, in accord with previous holdings of this court, we held that fraud is a question of fact (sec. 7482, Rev. Codes 1921), that the burden of proof is upon the one who alleges it, and that the elements of actual fraud under this statute required to be established are: " (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury." (26 C. J. 1062. See, also, *Stillwell* v. *Rankin,* 55 Mont. 130, 174 Pac. 186; *Connelly Co.* v. *Schlueter Bros.,* 69 Mont. 65, 220 Pac. 103.)

And in the case of *Koch* v. *Rhodes,* 57 Mont. 447, 188 Pac. 933, it was by this court pertinently stated: "While it is generally held that one has no right to rely on representations as to the condition, quality or character of property where the parties stand on an equal footing, and have equal means

of knowing the truth, the contrary is true, however, where the parties have not equal knowledge, and he to whom the representations are made has no opportunity to examine the property.  *  *  *  The strict rule of *caveat emptor* does not apply where fraud entered into the transaction."

It is manifest to us from the evidence that the district court correctly applied the law. The statements made to the defendants by the agent of the Rumely Products Company were the inducing cause for the defendants' signing the notes in suit; they were material; they were false; and the speaker either had knowledge of such falsity, or was in ignorance of the truth, and intended that his statements should be accepted and acted upon; the defendants were wholly ignorant of their falsity and rightfully relied upon the truth thereof, not having equal means of knowing the truth or opportunity to examine the property, resulting in their damage, the proximate cause of which is traceable to such representations.

It is the contention of plaintiff's learned counsel that the [3] contract for the purchase of such implements having been reduced to writing may not be varied by parol evidence respecting preliminary negotiations, under the provisions of section 10517, Revised Codes 1921, and the decisions of the courts. However, that which is herein stated as the law applicable to contracts vitiated by fraud effectually disposes of this argument.

We recognize and appreciate the general rule that a contract [4] must be promptly rescinded upon discovery of fraud or it will be regarded as having been ratified (sec. 7567, Rev. Codes 1921; *McConnell* v. *Blackley,* 66 Mont. 510, 214 Pac. 64; *Ott* v. *Pace,* 43 Mont. 82, 115 Pac. 37), and that where after the discovery of fraud or breach of warranty entitling a party to rescind a contract, the purchaser continues to use and deal with the property as his own, or does other acts inconsistent with his right to rescind, he will be held to have elected to have ratified the contract and waived his right to

rescind; but here there was justification for retaining the property so long as the defendants did, as the plaintiff was constantly insisting that the machinery would be made satisfactory in every particular. The plaintiff should not be heard to complain of delays which it occasioned by inducing the defendants to extend indulgences on promises to make good its undertaking. (*Ray* v. *American Photo Player Co.*, 46 Cal. App. 311, 189 Pac. 130; *Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513, 153 Pac. 951.) "Diligence in rescission is always a relative question." What is unreasonable delay in a given case must depend upon particular circumstances. (*Thompson* v. *Rhodehamel*, 71 Wash. 24, 127 Pac. 572; *Freeman* v. *Gloyd*, 43 Wash. 607, 86 Pac. 1051.) "Delay in formal decision, induced by the promises of the vendor to make machinery work properly, is not a waiver of the right to rescind." (*Schroeder* v. *Hotel Commercial Co.*, 84 Wash. 685, 147 Pac. 417.) Here the delay was justified under the facts and cannot be said to have been unreasonable. Clearly the defendants were warranted in rescinding the contract, and the notes in suit are uncollectible for failure of consideration.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, MATTHEWS and STARK concur.

Rehearing denied September 21, 1927.